## Barker *versus* Beeber, Receiver of The Lycoming Fire Insurance Company.

1. All the requirements of the Act of July 26th, 1842, P. L., 426, authorizing a judgment to be entered on a promissory deposit note, must be strictly complied with, as this is in derogation of the common law rights of the maker of the note.

2. Before execution can issue on the judgment so entered, the statements required by said Act must be filed, which must be full, specific, and in detail.

3. These statements must be verified by the affidavit of the treasurer of the company, not as being correct transcripts from the books of the company, but as being correct statements of the actual receipts and expenditures of the company.

4. The filing of the affidavit of the receiver of the company to these statements, in the absence of proof of the inability or of the refusal of the former treasurer of said company to make the requisite affidavits, is not a compliance with the requirements of the Act.

February 24th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, of *Wayne county:* Of July Term 1885, No. 176.

Rule to show cause why judgment should not be stricken from the record, and the *fi. fa.* and levy thereon should not be set aside. Rule discharged except as to the levy on the defendant's personal property. As to this the rule is made absolute.

The defendant had insured his real estate in the Lycoming Fire Insurance Company, and had given in part payment of his premium the following deposit note:—

$795.00. For value received, in Policy No. 132,464, risk commencing the 17th day of February, A. D. 1876, issued by The Lycoming Fire Insurance Company, I promise to pay to said Company, or their Treasurer, for the time being, the sum of seven hundred and ninety-five dollars, in such portions and at such time or times as the Directors of said Company may, agreeably to their act of incorporation, require.

On January 29th, 1885, the plaintiff filed an abstract containing the name of the person insured, the amount of the deposit note unpaid, &c., as required by the Act of July 26th, 1842, P. L. 426, whereupon judgment was entered against the defendant in the sum of $200.39. On the same day statements were filed verified by the oath of the Receiver, of the receipts and expenditures of the said company as taken from the books of said company which he deposed were correct to the best of his knowledge and belief. The plaintiff then directed a *fi. fa.* to issue on said judgment for $122.43, being the amount due on said note for assessments laid upon it. The sheriff levied upon the personal property of the defendant by virtue of this writ when the above rule was taken.

In disposing of this rule the court, MCCOLLUM, P. J., filed the following opinion :—

To acquire a lien under the Act of July 26th, 1842, the company is required to make out and deliver to the prothonotary of the county in which the real estate insured is situate, a memorandum of the name of the individual insured, a description of the property, the amount of the deposit note unpaid, and the term for which the insurance shall continue. This provision has been complied with in this case. The act referred to also provides that before an execution shall issue a statement shall be made by the officers of the company of the amount of premiums received, and the manner in which the money of the company has been expended, and filed in the office of the prothonotary of the county wherein members of the company reside who are to be affected by the issuing of

[Barker *v.* Beeber.]

such execution. A statement has been filed under this last provision, but it is contended that it is defective and insufficient. We have examined it and think it is full enough, and in compliance with the law. A like statement was held sufficient by the Court of Common Pleas of Tioga County, in an opinion by Judge WILLIAMS. The right of the company to enter judgment upon the premium notes of its members is undoubted : Krugh *v.* Ins. Co., 27 P. F. S., 15. The lien of such judgment is, however, restricted to the property insured, and the execution upon the judgment can only sell such property : Halfpenny *v.* People's Insurance Co., 4 Norris, 48. . It follows that in this case the levy upon personal property should be set aside, and that the judgment and execution should remain, the first as a lien upon the insured property, and the execution as process to bring that property to sale if the judgments are not paid.

The rule is discharged, except so far as the same relates to the levy upon defendant's personal property, and as to the levy upon such property the rule is made absolute.

The defendant thereupon took this writ assigning for error the refusal of the court to strike off the judgment and to set aside the writ and the levy.

*H. Wilson*, for plaintiff in error.

*George G. Waller*, for defendant in error.

Mr. Justice PAXSON delivered the opinion of the court April 5th, 1886.

This was a proceeding on the part of the Receiver of the Lycoming Fire Insurance Company to collect from the defendant below the amount of certain assessments upon his premium note held by said company. It was instituted under the eleventh section of the Act of 26th July, 1842, P. L., 426. The right of the company to enter judgment upon its premium notes under this Act was settled in Krugh *v.* The Ins. Co., 77 Penn. St. Rep., 15, and in Halfpenny *v.* People's Ins. Co., 85 Id., 48. But this proceeding is in derogation of the common law rights of the insured; it gives a summary if not a harsh remedy to the company, and must be strictly construed. To entitle the company to enter a judgment and issue an execution against a man who has neither confessed judgment nor had a judgment recovered against him by a suit, all the requisites of the Act must be strictly complied with.

The said Act provides : " That before any execution shall be issued against the members of said company, it shall be the duty of the officers of said company to cause to be made out a

[Barker *v.* Beeber.]

statement of the amount of premiums received, and the manner in which the money of the company has been expended. and file a copy thereof, attested by the oath or affirmation of the treasurer, in the office of the prothonotary of each county wherein members of said company reside who are to be affected by the issuing of such execution."

The affidavit filed in this case was made by the Receiver and sets forth " that the above and foregoing statement has been taken from the books of the Lycoming Fire Insurance Company, and shows the amounts received and expended during the times therein mentioned, as appears by said books, vouchers and papers of said company, and is correct to the best of his knowledge and belief."

The statement referred to is composed of a number of papers showing the receipts and expenditures between stated periods. They give details to some extent, but are lumping just where they should have been specific. As an illustration, I will take the statement contained on page 11 of the plaintiff's paper book. It purports to show the condition of the company between May 1st, 1879, and February 25th, 1880, the time covered by assessment No. 33, from which it appears that the amount paid for officers' salaries was $20,747.00, and for losses and damages by fire $233,086.52. These large items are given with an entire absence of detail. We may assume, without violence to the Act of Assembly, that its object in requiring this statement as a preliminary step to the issuing of an execution is to give the assured reasonable information as to the expenditures of the company, in order that he may have a day in court to contest its validity or its correctness. But how is the insured to test its correctness when the whole amount of losses paid is stated in a gross sum, without any information as to whom such losses have been paid, and the amounts of such payments respectively? And if he should think that the munificent sum paid for officers' salaries was unreasonable under the circumstances, how can he test its correctness with no detail as to the number of officers, or the amount paid to each? It is no answer to this to say that it would involve figures and extend the statement. Where a company is allowed by law to enter a judgment and issue execution upon a plain note without any suit or proceeding whatever against the debtor, it is not too much to require that the latter shall have full information of what his money is to be taken for, before an execution shall go out against him to collect it. If it requires additional clerical labor, the company must procure it; in this particular case the amount charged for such services would appear to have been ample for such purpose.

But there is another difficulty. The Act of 1842 requires

[Pilger *v.* Commonwealth.]

that the statement shall be attested by the oath of the treasurer. It does not say the treasurer or other officer. The palpable object of requiring it to be made by the treasurer was that he is supposed to have actual knowledge of the items in the statement. The oath in this case was made by the Receiver, and it practically amounts to no more than saying that the statement is a correct copy from the books. And when he says, "it is correct to the best of his knowledge and belief," he evidently means that it is a correct copy from the books. This is not what the Act contemplates nor what it says. It makes no reference to what appears upon the books. It calls for an oath sufficiently precise as to render the treasurer liable to an indictment for perjury if it is false, even though the books should sustain every word of it.

But it is said that the company, being insolvent and in the hands of a Receiver, there is no treasurer to make the required oath. This is begging the question. It nowhere appears that the person who was treasurer and made the disbursements is not alive and willing to make the requisite oath. It is not necessary for us to decide that in case of the insolvency and dissolution of a company, and the death of the former treasurer, or his refusal to make the oath, it could not be made by some other person having knowledge of the facts; but we do decide that a mere statement from the books, without the oath of any one that the disbursements therein referred to were actually made, is not a compliance with the Act of 1842, and does not justify the issuing of an execution.

The judgment entered against the defendant below must stand, but it was error to refuse to set aside the writ of *fieri facias*, and to this extent the order of the court below must be

Reversed.