THE WINDFALL MANUFACTURING COMPANY *v.*
PATTERSON ET AL.

[No. 17,979.    Filed May 12, 1897.    Rehearing denied October 6, 1897.]

NUISANCE.—*When a Business Will be Enjoined as.*—A business which
is a nuisance *per se*, as also one that is so conducted as to become an
actual nuisance, will be enjoined; but a business which merely
threatens to become a nuisance, will be enjoined only where the
court is satisfied that the threatened nuisance is inevitable.   *p. 418.*
SAME.—*Natural Gas.*—A gas well sunk to supply fuel for a manufac-
turing plant is not *per se* a nuisance.   *p. 421.*
NATURAL GAS.— *Drilling Well Near Dwelling.— Injunction.—* The
drilling of a gas well within 152 feet of a dwelling house will not be
enjoined on account of the noise, pollution of the·air, danger from
fire or explosion that would result from operating the well, or on
account of water or oil from the well, where it is not shown with
certainty that water, oil, or gas will be found, and it is not shown
that the gas well could not be operated in such a manner as to avoid
the injuries apprehended.   *pp. 422, 423.*

From the Howard Circuit Court. *Reversed.*

*J. C. Blacklidge, C. C. Shirley, R. B. Beauchamp,
W. W. Mount* and *W. O. Dean,* for appellant.

*M. Bell, W. C. Purdum, Gifford & Nash* and *Gifford
& Coleman,* for appellees.

HOWARD, J.—The appellees alleged in their com-
plaint that the appellant was "threatening to and pro-
ceding to drill a gas well" within 152 feet of appel-
lees' dwelling, and asked that the appellant be re-
strained from digging said well, and from digging any
well, or laying pipes therefrom, "at any other point
within 300 feet" of appellees' property.

The complaint was in two paragraphs, to the first
of which, named second in the record, there was a

special paragraph of answer; and to this answer a demurrer was sustained. The cause was submitted to the court for trial, and judgment rendered enjoining the company from drilling the well. The rulings on the pleadings, and the overruling of the motion for a new trial are assigned as errors.

It is doubtful whether the evidence is in the record. There is a certificate by a reporter that the evidence was taken down by him in shorthand and then transcribed into the longhand writing to which he certifies. The clerk also certifies "that the evidence set out in the bill of exceptions is the same that was taken by John Ingels, who is the official court reporter of the Howard Circuit Court." We might, perhaps, presume that the reporter was sworn; but there is nothing to show that his transcript of the evidence was filed with the clerk before it was incorporated in the bill of exceptions, or, indeed, that it was ever so filed and incorporated. The questions, however, which might be considered in passing upon the motion for a new trial are, in a great measure, those raised upon the pleadings. The main facts do not seem to be in dispute.

It appears that the appellant company was organized in 1891, for the purpose of buying land and machinery to engage in the manufacture of brick and drain tile. In pursuance of this object, the company, during the same year, purchased twenty-two acres of land near the town of Windfall. The land was believed to contain an unlimited supply of natural gas, such as was needed to operate the business in which appellant was to engage. During the same year, at a cost of $25,000.00, the company erected its plant and machinery, locating the same near the highway on the west line of said tract, and within 200 feet of the land afterwards purchased by appellees. In that year,

also, the company drilled a gas well near the southeast corner of its land, and obtained a sufficient flow of gas to run its factory until the year 1895, when the gas failed in that well.

It is averred in the answer, that the twenty-two acre tract of land is not large enough to afford more than two sites for the location of a gas well, such as would probably furnish gas in sufficient quantity to operate the factory; that on the failure of the east well, it was necessary to suspend the operations of the factory until another well should be located and drilled; that three years after the location of the plant, the appellees, with full knowledge of all the facts, purchased the land on which they erected the dwelling house in question; that in 1895, on the failure of appellant's first well, and while appellant was prospecting for the location of a second well, the appellee, William E. Patterson, gave his consent that a well might be sunk on the west side of appellant's land, not to be nearer than 150 feet to appellees' said dwelling; and that appellant, relying upon this agreement, proceeded to drill the well here in question, and to lay the gas mains therefrom; that after the company had been engaged for four days in sinking the well, and when they were about to begin drilling the rock, the restraining order was issued; and that the point selected for drilling the second well was the furthest possible from the first well, and the best that could be selected.

The reasons given in the complaint to show why the injunction should be issued were: That if the proposed well should be completed, there would be a continuous loud noise, depriving appellees of the enjoyment of their property and greatly depreciating its value; that natural gas is a very explosive and inflammable substance, and when confined under the surface of the earth, permeates the soil for hundreds of feet;

and, as soon as freed in the air, produces a stench, tarnishes paint, furniture and silverware, and renders the atmosphere unfit to breathe for many feet around the place of such escape; that the pipe line, if constructed to carry gas at rock pressure, as intended, would endanger the lives and property of appellees and their families; that gas wells attract the electric fluid and are exceedingly liable to be struck by lightning; that in the digging of said well there is danger of bringing from the earth other substances, such as water and oil; and that, if the well should overflow with either oil or water, great damage would result, rendering appellees' property unfit for the purposes for which they hold the same.

The dangers thus apprehended by appellees were such as might arise in case the well should be sunk, and gas, oil or water be found. It is not said that any evil result could come merely from the drilling of the well. But the well might be sunk into the trenton rock, and yet no gas, oil or water be brought to the surface. It is not clear, therefore, that the danger apprehended is so imminent as to warrant the issue of a restraining order. In addition, it may be questioned whether an injunction should in any event issue, unless it be true that a gas, oil, or water well is a nuisance *per se*, or unless it should be made to appear that the well and pipes of appellant were to be improperly put down and afterwards carelessly attended to.

In *Dalton* v. *Cleveland, etc., R. W. Co.*, 144 Ind. 121, the appellant sought to enjoin the erection on appellee's right of way of a coal chute, to be used for supplying its engines with coal, and to be situated very near to a building owned and used by appellant as a dwelling and business house. It was alleged that from the height and character of the structure it would

greatly interfere with appellant's access, view, light and air, would cause unusual, loud and offensive noises, disturb sleep, cause coal dust, fumes of sulphur and other noisome gases to be blown into appellant's building, injuring furniture, stock in trade, and in other ways greatly impairing the value of appellant's property and causing annoyance, discomfort and danger to appellant and to the occupants of his building. The court, in that case, while not denying that unlawful uses of the structure might be restrained, yet held that, as the erection of the building would of itself not constitute a nuisance, a writ could not issue, for the reason that the threatened evils might never result. The case of *Keiser* v. *Lovett*, 85 Ind. 240, and other authorities were there cited, and the court concluded that: "Each of these cases recognizes the rule that equity will not restrain that which is not a nuisance upon the claim that it may be so used as to constitute a nuisance."

A business which is a nuisance *per se*, as also one that is so conducted as to have become an actual nuisance, will be enjoined. But a business which merely threatens to become a nuisance will be enjoined only where the court is satisfied that the threatened nuisance is inevitable; and, since the remedy is so severe, resulting often in wholly depriving an owner of the use of his property, the court will proceed with the utmost caution in restraining such threatened and possible injuries.

It was said in *Duncan* v. *Hayes*, 22 N. J. Eq. 25, that "A court of equity will not restrain, by injunction, any lawful business, or the erection of any building or works for such business, because it is supposed or alleged that such business will be a nuisance to a dwelling house near it; it must be clear that the business will be a nuisance, and that it cannot be carried on so as not to be such."

And, in *McCutchen* v. *Blanton*, 59 Miss. 116, the court said: "Every doubt should be solved against the restraint of a proprietor in the use of his own property for a purpose seemingly lawful, and conducive both to individual gain and the general welfare. Relief by injunction is so severe in its consequences that it is not to be granted in such a case, except when the right to it is clearly and conclusively made out. To interfere with one's right to use his own land for the production of what he pleases, in a case of doubt, would be a flagrant abuse of power. It is not enough to show a probable and contingent injury, but it must be shown to be inevitable and undoubted." See, also, *Cleveland* v. *Citizens Gas Light Co.*, 20 N. J. Eq. 201; *Ryan* v. *Copes* (S. C. 11 Rich. Law, 217), 73 Am. Dec. 106 and note; *Doellner* v. *Tynan*, 38 How. Prac. (N. Y.), 176; *Rhodes* v. *Dunbar*, 57 Pa. St. 274, 98 Am. Dec. 221; *Huckenstine's Appeal*, 70 Pa. St. 102, 10 Am. Rep. 669; *Gilbert* v. *Showerman*, 23 Mich. 448; *Owen* v. *Phillips*, 73 Ind. 284; *Barnard* v. *Sherley*, 135 Ind. 547, 41 Am. St. 454, 24 L. R. A. 568.

In *Doellner* v. *Tynan, supra*, it was held that where a street in a city ceases to be used as a place of residence, and is changed to a place of business, no one or two persons, who may, for any reason, desire to continue their residence therein, should be allowed to prevent the carrying on of a lawful and useful trade, merely because they are or may be subjected to annoyance, or even loss thereby. And, in *Gilbert* v. *Showerman, supra*, the court refused to restrain the carrying on, in a proper manner, of a steam flouring mill in the business part of a city, notwithstanding the use of such building for that purpose caused annoyance to the complainant and his family, and rendered the occupation of his building, as a residence, less desirable than it otherwise would be. In that case, Judge

Cooley said: "The most offensive trades are lawful, as well as the most wholesome and agreeable; and all that can be required of the men who shall engage in them is, that due regard shall be had to fitness of locality. They shall not carry them on in a part of the town occupied mainly for dwellings, nor, on the other hand, shall the occupant of a dwelling in a part of the town already appropriated to such trades, have a right to enjoin another coming in because of its offensive nature. Reason, and a just regard to the rights and interests of the public, require that in such case the enjoyments of pure air and agreeable surroundings for a home shall be sought in some other quarter; and a party cannot justly call upon the law to make that place suitable for his residence which was not so when he selected it."

In the case at bar, the appellant, in locating its brick and tile works, for which natural gas was to be used as fuel, selected a place retired from all residences, and there erected its plant and machinery at great expense. The business so commenced was continued for three years before the appellees came and erected their dwelling upon land across the highway from appellant's land and within 200 feet of its brick and tile works. Certainly, therefore, unless the works should constitute a nuisance per se, or unless they were so conducted as to become a nuisance in fact, the appellees are not in a position to demand that equity restrain the appellant in the use of its property.

A nuisance per se, as the term implies, is that which is a nuisance in itself, and which, therefore, cannot be so conducted or maintained as to be lawfully carried on or permitted to exist. Such a nuisance is a disorderly house, or an obstruction to a highway or to a navigable stream. But a business lawful in itself can not be a nuisance per se, although, because of sur-

The Windfall Manufacturing Company v. Patterson et al.

rounding places or circumstances, or because of the manner in which it is conducted, it may become a nuisance. Certain kinds of business or structures, as powder houses or nitroglycerine works, are so dangerous to human life that they may be maintained only in the most remote and secluded localities. Others, as slaughter houses and certain foul-smelling factories, are so offensive to the senses that they must be removed from the limits of cities and towns, and even from the near neighborhood of family residences. Yet there must be some proper place where every lawful business may be carried on, without danger of interference on the part of those who, in some slight degree, may be annoyed or endangered by the nearness of the objectionable occupation.

Of course all persons have the right to insist that a business in any degree offensive or dangerous to them shall be carried on with such improved means and appliances as experience and science may suggest or supply, and with such reasonable care as may prevent unnecessary inconvenience to them. By such care and improved methods and appliances, many occupations formerly regarded as nuisances may now be carried on, even in populous neighborhoods, without annoyance to any one. So, an establishment in some degree offensive, as a livery stable, may be kept so cleanly, so free from anything to offend the sense of sight or of smell, that the proprietor may invite his most fastidious visitors to any part of it; although the same establishment might also be so kept as to be an abomination even to the passer-by upon the highway.

It cannot be said that a plant for the manufacture of brick and drain tile, or even a gas well sunk to supply fuel for such a plant, is a nuisance per se. The business is lawful, and, if located in a proper place, and conducted and maintained in a proper manner,

neither the plant nor the well can be treated as a nuisance.

Appellees voluntarily selected the neighborhood of appellant's plant for their residence, three years after the appellant began business there; and while this circumstance is not controlling, yet it is one that must be taken into consideration. Nor will it be sufficient answer that appellant's gas well was on the east side of the brick yard at the time the appellees selected their home on a lot within 200 feet of the factory. Experience has shown that gas wells are of short life, and that, after the failure of one well, another, in order to be successful, must be located at a considerable distance from the first. It is averred that there was room for but two wells on this twenty-two acre tract, and that the location of the proposed well is the farthest possible from the first well and the best that could be selected. It is, besides, admitted by the demurrer to the answer that the appellee, Willard E. Patterson, agreed that the second well should be located within 150 feet of his house; and, while it is possible that such agreement might not bind his co-appellee, yet the circumstance shows that the appellant, in locating its well at the distance of 152 feet from appellees' dwelling, was proceeding carefully and with due regard to appellees' rights.

Unless, therefore, it should be made to appear that the gas well could not be so managed and maintained as not to be of more than slight or barely possible danger or annoyance to appellees, it does not seem that they could have any sufficient cause to ask that the sinking of the well be restrained. The record does not show, nor have we any means of knowing, that a well at a distance of 152 feet, or over nine rods, from a dwelling house, cannot be so maintained and cared for as not to cause the injury and annoyance claimed to be threatened to appellees in this case.

The Windfall Manufacturing Company *v.* Patterson *et al.*

It is to be remembered that before a court of equity will restrain a lawful work, from which merely threatened evils are apprehended, the court must be satisfied that the evils anticipated are imminent and certain to occur. An injunction will not issue to prevent supposed or barely possible injuries. In the case before us, it is not shown that even if the gas well were in operation it could not be so managed and cared for as to avoid all the injuries apprehended. But, more than this, there might never be any gas found in the well. This, the appellees practically concede, when they recite that, although gas might not be found, yet that oil, or even water, coming from the well would be dangerous to their residence. This is altogether too speculative. If the appellant company is willing to invest its money in a well from which may be brought to the surface of the earth an uncontrollable element productive of the evils feared by appellees, it must be allowed to do so at the hazard to itself of all the consequences for which it would thus become liable. But if the well may be sunk, and the gas, oil, or water therefrom, if any, can be so controlled and managed as to cause no appreciable injuries to appellees or to any one else, then such reasonable and lawful use of property ought not to be prevented by the courts. To do so would be sheer usurpation of arbitrary power.

We do not think the statute alluded to, section 5108, Burns' R. S. 1894 (Acts 1889, p. 22), in relation to condemnation proceedings for gas pipe lines, and providing that lands for such purposes shall not be condemned within seventy-five yards of any dwelling or barn, has any application here. Appellant had not instituted any condemnation proceedings, but was at work on its own land. Besides, the statute permits pipes to be laid along a public highway, notwithstanding the nearness of the buildings named; and, in the

case at bar, not only was appellant engaged in sinking a well and laying pipes on its own lands, but there was a public highway between its lands and those of the appellees.

We are, therefore, not satisfied, that the record presents a case warranting the issuing of the writ of injunction. The judgment is reversed, with instructions to sustain the demurrer to each paragraph of the complaint, and to overrule the separate demurrers to the second paragraph of the answer, and for further proceedings not inconsistent with this opinion.