## INHABITANTS OF MARION *vs.* FREDERICK TUELL.

### Washington. Opinion May 5, 1914.

*Bridge. Damages. Dynamite. Exceptions. Explosives. Highway.*
*Navigation. Negligence. Private Nuisance. Public Nuisance.*

1. That upon the assumption that the bridge was a nuisance, it was the undoubted right of the defendant to do whatever was reasonable and necessary to remove so much of the structure as deprived him of the lawful use of the stream for driving his logs. This rule is founded, not only upon authority, but necessity.

2. The law does not require a resort to the courts for abatement of such a nuisance, for it would be entirely inefficient and futile.

3. In a broad sense, a common nuisance is an unlawful condition, and a municipality has no right to establish such a condition than an individual.

4. The true theory of abatement of nuisance is that an individual citizen may abate a private nuisance injurious to him, when he could also bring an action.

5. When a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing.

6. But in doing this, it was incumbent upon the plaintiff to do as little damage as was consistent with the accomplishment of his purpose.

On exceptions by the defendant. Exceptions sustained.

This is an action on the case for the recovery of damages alleged to have been sustained by the plaintiffs by reason of injury to a public bridge, being part of the highway known as Bridgham's Corner road and crossing Cathance Stream in the plaintiff town. Said injury is alleged to have been caused by the wrongful act of the defendant by placing a stick of dynamite under the abutment at the easterly end of said bridge and exploding said dynamite, thereby tearing said abutment apart and causing the damage complained of. The stream was a floatable highway and has been used by the public from time immemorial for the purpose of floating logs and timber to the mills. At the time of the alleged wrongful act, the defendant was engaged in the performance of his contract to drive a large amount of logs from Cathance lake down said stream to the pond of Dennysville Lumber Company at Dennysville.

The defendant pleaded the general issue and the jury returned a verdict for the plaintiff for $92.75. The defendant excepted to various rulings of the presiding Justice in his charge to the jury.

The case is stated in the opinion.

*Ashley St. Clair, and J. H. Gray,* for plaintiffs.

*C. B. & E. C. Donworth,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, PHILBROOK, JJ.

SPEAR, J. This is an action on the case in which the plaintiff town seeks to recover damages of the defendant for wilfully, negligently and wrongfully damaging a bridge, by using dynamite or other explosives in such close proximity to the abutment of the bridge as to tear it apart and damage it, thereby rendering the superstructure unsafe and dangerous for public travel, so that they were obliged to close the bridge and repair it at a large expense. At the trial of the case it was admitted that the bridge was a part of the highway crossing Cathance stream in Marion. By the exceptions it appears that the stream was "a floatable highway, and has been used by the public from time immemorial for the purpose of floating logs and timber from the forests to the mills; that the defendant at the time of the alleged wrongful act was engaged with his crew in the performance of his contract to drive approximately 1,100,000

feet of logs from Cathance lake in and down said stream to the mill pond of Dennysville Lumber Company of Dennysville." The exceptions further show that the explosive was never used unless absolutely necessary, and that in getting the logs by the abutments, the defendant and his servants were in the constant exercise of due care; that if he or they caused any injury to the bridge or abutments by the use of dynamite, or otherwise, such injury was wholly unintentional. The defendant also denies that any damage to the structure was caused by the explosion, claiming that if any injury was occasioned to the bridge by the passage of his logs, it was done by the impacts of the logs against the abutments, and by the logs frequently being driven by the force of the current into the openings, and in the process of disengaging the logs when so interposed.

The declaration does not allege nor is it anywhere contended that the defendant, in the use which he made of dynamite, had any intention of disturbing any part of the bridge, simply because it was a public nuisance. The exceptions show that "there was no evidence that defendant, his servants or agents, placed or exploded any dynamite or other explosive substance under the abutment; nor was there any evidence that the defendant, his servants or agents, did any act with the direct purpose or intention of injuring the bridge or abutments."

The case comes up on motion and exceptions, but the motion is withdrawn. It seems to have been conceded, if this bridge was an obstruction to public navigation so that it impeded the passage of the defendants logs, it was a public nuisance. The court in its treatment of the case seems to have assumed that the bridge was a public nuisance, and to have based his rulings upon the theory, that the plaintiff, in the use of dynamite to extricate his logs from the bridge, was undertaking to abate a public nuisance; and acted upon the assumption, if it was a public nuisance, and the defendant's logs were impeded in their progress by it, that the defendant. although in the exercise of due care in the process of removing his logs, would be responsible for any injury to the abutment, in so doing. That this was the theory of the ruling will appear from the following testimony and colloquy: John A. Robinson, called by defendant, was asked on direct examination: Q. When a log was under water what did you do? A. If the log was under water we

cut it with dynamite.  Q.  Why didn't you shut the gates down above and let the water run out, so it would be on .the surface? A.  No river driver does that.  Q. , Why didn't you do it? The court:  It don't make any difference why he didn't do it.  We are not trying out the right of Mr. Tuell to drive logs there because he had a right to.  He has got a suit against the town for being obstructed in doing it.  That don't have anything to do with this case.  Whether they did this or didn't do that don't have anything to do with it."  Mr. E. C. Donworth:  If the court please, our contention is that if this man Tuell used reasonable care, and used dynamite when it was reasonably necessary and the bridge was injured thereby, we are not chargeable.  The court:  I shall rule that if he blew this bridge up, or an abutment to it, by the use of dynamite and thereby destroyed it, he is liable in this action.  A man cannot abate a public nuisance by saying that he exercised reasonable care.  He may abate a private nuisance and may not be liable in damages, but a public nuisance must be abated by officers chosen by the public to do it.  If you leave it for every man to determine whether he may abate a public nuisance, we shall be blowing up all the bridges in the State.  The law says Mr. Tuell had no right to blow the bridge up, if he did.  Mr. E. C. Donworth: He is chargeable in damages if he did it accidentally?  The court: Yes, I shall so instruct the jury.  And the court did so instruct them, saying:  (1) If it was a public nuisance neither the defendant nor his servant or agent had any right to abate it, or remove it or destroy it; (2) If you should find it was an obstruction to public navigation so that it impeded the passage of the defendant's logs, it was a public nuisance, and neither he nor his servants had any right to remove or destroy it."  The court proceeded to say:  "Now, you will determine first, gentlemen, whether the defendant or his servant or agent did explode this dynamite there, as it is claimed. If they did, I instruct you that they are liable for it, and the defendant must make the town whole for the damage he caused in blowing up or damaging the abutment there, if he did it either by himself ·or his servant or agent."  These rulings are erroneous.  As already noted, they proceed upon the ground that the bridge was a public nuisance, and because it was a public nuisance the defendant had

no right to do it any injury, although it was necessary, in order to enable him to extricate the logs that had been driven into the openings of the abutment, and remove those that had jammed against it, so that perhaps the whole drive should not be held up.

We do not understand this to be the law. Upon the assumption that the bridge was a nuisance, which the jury might have found if the question had been open to them, it was the undoubted right of the defendant to do whatever was reasonable and necessary, to remove so much of the structure as deprived him of the lawful use of the stream for driving his logs. This rule is founded not only upon authority, but necessity. In the case at bar the defendant was driving down this floatable river, a legal highway for the passage of all lawful traffic, more than a million feet of logs, worth from ten to twenty thousand dollars. It is common knowledge that the driving pitch of water at best is short, and at times very limited. It is equally well known, if a drive of logs is stalled and has to lie over for a season, there is a great depreciation of value. Accordingly, unless the defendant was permitted to interfere with this nuisance in his path, to the necessary extent of making a passage-way, his whole drive might have been held up on the river for a year. Resort to the courts for the abatement of such a nuisance would be entirely inefficient and futile. And the law does not require it.

The plaintiffs, however, contend that the bridge having been located by municipal authority is a legal structure, and, if a common nuisance, cannot be abated by a private individual, and cites *State v. Leighton,* 83 Maine, 419, as authority for this doctrine. The brief interprets the opinion in this language: "A lawful structure, though a public nuisance, cannot be removed, or the public nuisance abated by one whose individual rights are affected thereby." This statement is inconsistent with itself. A lawful structure is not a common nuisance. In other words, a common nuisance is not lawful. Nor does this case hold or intimate that the bridge destroyed by the defendant was a common nuisance. The decision is based solely upon the ground that the bridge was authorized to be built over tide waters, not under the general powers of municipal officers to lay out highways, but by an act of the Legislature giving specific

authority to build over this specfic water. The word "nuisance" is not to be found in the opinion. True, a bridge built by municipal authority is not of itself a common nuisance. In the case at bar the offending thing is not the bridge itself, but the manner of the placing and construction of it. The town had a right to build this bridge under authority of the general statute. But a bridge built by such authority over a navigable or floatable stream, in such a manner as to unreasonably interfere with navigation or the use of a stream for floatable purposes is, per se, a common nuisance. *Windfall Mfg. Co.* v. *Patterson,* 148 Ind., 414, 62 Am. S. R., 532. In a broad sense a common nuisance is an unlawful condition. A municipality has no more right to establish such a condition than an individual. *Mootry* v *Danbury,* 45 Conn., 550, is a case which seems to be on all fours with the case at bar. It involved the erection of a bridge that flowed the water back upon the plaintiff. A general demurrer was filed to the declaration and argued upon the ground, that the duty of towns to keep their highways in repair was imperative under the statute. Upon this contention after alluding to the statute regarding the liability of towns for defects, the court say: "The liability of the defendants, however, if liable at all, must rest upon broader ground than that statute. The statute simply compels them to do by making them liable in damages if they fail to do. The principle of universal application—that every man shall transact his lawful business in such a manner as to do no unnecessary injury to another—compels them to do what they are required to do in a proper manner. In other words, towns will not be justified in doing an act lawful in itself in such manner as to create a nuisance any more than individuals and if a nuisance is thus created, whereby another suffers damages, towns like individuals are responsible. To the same effect is *Danbury R. R. Co.* v. *Norwalk,* 37 Conn., 109.

Upon this theory of the law that a town has no right to create a nuisance, the principle laid down in *Brown* v. *Perkins et al.,* 12 Gray, 89, must control this class of cases. Shaw, C. J., clearly states the rule as follows: "The true theory of abatement of nuisance is that an individual citizen may abate a private nuisance injurious to him, when he could also bring an action; and also,

when a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing. As in the case of the obstruction across a highway, and an unauthorized bridge over a navigable water course, if he has occasion to use it, he may remove it by way of abatement." This theory of the law was followed in *Mann* v. *Marston,* 12 Maine, 32, and in *Hamilton* v. *Goding,* 55 Maine, 419, in which the language of *Brown* v. *Perkins* is cited with approval. In *Corthell* v. *Holmes,* 87 Maine, 24, the court say: "When a public nuisance obstructs an individual's right, he may remove it to enable him to enjoy that right," and also cites *Brown* v. *Perkins.* In a case between the same parties in 88 Maine, 376, the court sustained this doctrine, citing many cases.

Upon authority as well as reason the defendant had a right to interfere with the bridge to the extent of removing so much of it as became a nuisance in the path of his logs in their course down the stream.

But in doing this it was incumbent upon the defendant to do as little damage as was consistent with the accomplishment of his purpose. Accordingly, the defense offered, tending to show due care on the part of the defendant, in extricating his logs from the abutment, was admissible, and the ruling excluding it, erroneous. It was the duty of the defendant, in pursuing the lawful right of passage through this bridge, to do only what was reasonable and necessary to attain his end. He was bound to act within the standard of due care. He could not wantonly and wilfully do damage that was unnecessary. The last paragraph of *Corthell* v. *Corthell,* 88 Maine, supra, confirms this view. It says: "The defendant's plea avers that he removed the incumbrances placed in the way by the plaintiff, with due care and without damage more than was necessary to secure the passage for himself and his teams, agents, and servants over the same." All this is admitted by the demurrer, and is a good defense.

*Exceptions sustained.*