32 N.J. Super. 178 (1954)
108 A.2d 97
JOHN PRATICO, ALEX LUSKY, AND MICHAEL GALLIONE, PLAINTIFFS-RESPONDENTS,
v.
RAYMOND L. RHODES, COUNTY TREASURER OF THE COUNTY OF PASSAIC, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 2, 1954.
Decided September 21, 1954.
*181 Before Judges HALL, TOMASULO and MARIANO.
Mr. Saul M. Mann, attorney for and of counsel with plaintiffs-respondents, argued the cause.
Mr. Nicholas Martini, attorney for and of counsel with the defendant-appellant, argued the cause.
The opinion of the court was delivered by MARIANO, J.S.C. (temporarily assigned).
Plaintiffs instituted suit in the Passaic County District Court against Raymond L. Rhodes, as Treasurer of the County of Passaic, for the return and recovery of monies which they claim were unlawfully taken from them by members of the staff of the Prosecutor's Office of Passaic County during a raid conducted in the early morning hours of December 6, 1953, at 43 West Broadway, in the City of Paterson, New Jersey.
All three plaintiffs admit going to the premises in question to gamble and participate as players, in an illegal gambling operation which was then and there being conducted. They had no connection whatsoever with the illegal operation other than as players.
The front entrance of the building was barricaded with a steel door and the members of the raiding party were finally compelled to force entry through a side door. By the time entrance was made by the police the game had ceased and there was no money in view on the table upon which the so-called "crap game" or "dice game" had been conducted. Fifty-two persons were found on the premises, all of whom were subjected to a search, and the monies now sought to be recovered by the plaintiffs were taken from their person by direction of the said prosecutor.
Four individuals other than the plaintiffs were subsequently indicted and plead "guilty" to the operation of a "dice game" in violation of N.J.S. 2A:112-3. The three *182 plaintiffs and others were charged with the violation of an ordinance of the City of Paterson which provided that no person shall be present in any room within the City of Paterson wherein gaming is carried on, to which they entered a plea of "guilty" and were each fined the sum of $200.
The prosecutor thereafter, and in accordance with N.J.S. 2A:152-8 et seq., delivered the monies taken from the plaintiffs to the defendant, the County Treasurer of Passaic, who refused, upon demand, to return the sums of money in question to the respective plaintiffs.
The district court judge, sitting as judge and jury, pursuant to R.R. 4:53-1, found the facts specially and stated separately its conclusions of law thereon, and directed the entry of judgment in favor of the plaintiffs and the defendant appeals. Defendant argues that the monies on the persons of the plaintiffs at the time of their arrest, which are used or are available for use in the illegal operation, become contraband at law, thus forfeitable to the State under N.J.S. 2A:152-7 et seq., and that there was insufficient evidence to support the findings of the trial court, and that the verdict was contrary to the weight of the evidence.
Ordinarily money is not in itself an instrument of gambling, but is merely the stake for which men gamble; and as a general rule money is not subject to confiscation or destruction as a gambling device but should be returned to the owner. 38 C.J.S., Gaming, § 78c, p. 136; Krug v. Board of Chosen Freeholders of Hudson County, 3 N.J. Super. 22 (App. Div. 1949); Kenny v. Wachenfeld, 14 N.J. Misc. 322 (Sup. Ct. 1936); Rosen v. Superintendent of Police, 120 Pa. Super. 59, 181 A. 797 (Super. Ct. 1935); Fairmount Engine Co. v. Montgomery County, 135 Pa. Super. 367, 5 A.2d 419 (Super. Ct. 1939); People v. Moore, 410 Ill. 241, 102 N.E.2d 146 (Sup. Ct. 1951); Albright v. Karston, 209 Ark. 348, 190 S.W.2d 433 (Sup. Ct. 1945); Boyle v. State, 47 So.2d 693 (Sup. Ct. Fla. 1950).
Money may, however, under some circumstances be used as a gambling device, as where men gamble on the *183 toss of a coin, and money may become subject to seizure along with regular gambling apparatus where it has become an integral part of the illegal gambling operation. 38 C.J.S., Gaming, § 78c, p. 136, supra; Krug v. Board of Chosen Freeholders of Hudson County, supra; Kenny v. Wachenfeld, supra; Rosen v. Superintendent of Police, supra; Becker v. Farley, 137 N.J.L. 191 (E. & A. 1948); Fairmount Engine Co. v. Montgomery County, supra; People v. Moore, supra; People v. Del Mar Corp., 65 Cal. App.2d Supp. 854, 150 P.2d 826 (Super. Ct. 1944); People v. Wrest, 345 Ill. App. 186, 103 N.E.2d 171 (App. Ct. 1952); Gilley v. Commonwealth, 312 Ky. 584, 229 S.W.2d 60, 19 A.L.R.2d 1224 (Sup. Ct. 1950); Commonwealth v. Certain Gaming Implements and Personal Property, 313 Mass. 409, 47 N.E.2d 939 (Sup. Jud. Ct. 1943); People v. Krol, 304 Mich. 623, 8 N.W.2d 662 (Sup. Ct. 1943); Pannulla v. Rosenberg, 171 Pa. Super. 233, 90 A.2d 267 (Super. Ct. 1952).
Where money is earmarked and segregated as part of an illegal gambling operation, it then constitutes a gambling device subject to seizure. Kenny v. Wachenfeld, supra; State v. Link, 14 N.J. 446 (1954); Farley v. Manning, 4 N.J. 571 (1950); Krug v. Board of Chosen Freeholders of Hudson County, supra.
Where money is not found in a gambling device, but was used per se in connection with the illegal gambling operation, it has been held that such money after seizure is earmarked and segregated, and becomes contraband as in itself a gambling device which may not be recovered by the person from whom it was taken. Kenny v. Wachenfeld, supra; Krug v. Board of Chosen Freeholders of Hudson County, supra; Farley v. Manning, supra.
For collection of cases see Gilley v. Commonwealth, supra, annotated in 19 A.L.R.2d 1224.
From the evidence produced during the course of the trial it became a question of fact for the trial court, sitting as the trier of the facts, to decide in the light of all of the evidence and circumstances if the money in question taken from the *184 persons of the plaintiffs was received and held for use in an unlawful gambling operation. State v. Morano, 134 N.J.L. 295 (E. & A. 1946); State v. Link, supra. Whether the currency in question was earmarked and segregated for gambling operations has also been held to be a factual issue. Becker v. Farley, supra.
In Kenny v. Wachenfeld, supra, the plaintiff admitted that part of the money represented his collection during the day of his arrest while in pursuit of his business as a bookmaker, and thus the money was an integral part of the illegal gambling operation and was thus earmarked and segregated and became contraband.
In Krug v. Board of Chosen Freeholders of Hudson County, supra, the money in question was found in a locked closet immediately adjacent to one of the rooms used by the plaintiff for the conduct of his illegal gambling operation, to wit, the numbers game.
In State v. Link, supra, plaintiff's sole occupation was that of a bookmaker and the court found that the money in question was used either as the proceeds of or in connection with, set apart and segregated as part of his gambling operation in various counties in New Jersey.
The facts in Kenny v. Wachenfeld, supra, Krug v. Board of Chosen Freeholders of Hudson County, supra, and State v. Link, supra, are clearly distinguishable from the case sub judice in that the present plaintiffs were not the operators of the illegal gambling operation but merely so-called players, and that the monies in question were taken from the persons of the respective plaintiffs at the direction of the Prosecutor of Passaic County after the entry into the building of the law enforcing authorities. The monies taken from the plaintiffs was not lying on the dice table upon which the illegal gambling operation had been conducted. Also, the monies in question were not being held awaiting the outcome or determination of the throw of the dice. Therefore, there is presented an entirely different factual situation in the present case.
*185 The lower court found as a fact that prior to seizure the monies in question had been reduced to the exclusive control and possession of the plaintiffs and was not then and there being used as an integral part of the gambling operation and therefor was not subject to seizure.
Although the Superior Court, Appellate Division, is empowered to review the evidence relating to facts in cases, particularly where controversial issues are essentially factual, and make its own independent findings, the court is not disposed on appeal to overthrow conclusions of the trier of facts unless it is the court's conviction that such conclusions are so manifestly unsupported by or discordant with competent, relevant and reasonably credible evidence as to offend the interest of justice. Koolvent Aluminum Awning Co. of New Jersey v. Sperling, 16 N.J. Super. 444 (App. Div. 1951).
While under provision R.R. 1:5-3, made applicable to the Superior Court, Appellate Division, by R.R. 2-5, it may review issues of fact not determined by a finding of a jury and new and amended findings of fact may be made, due regard should be given to the opportunity of the trial court to judge the credibility of witnesses. Lehmann v. Lehmann, 7 N.J. Super. 232 (App. Div. 1950), petition for certification denied 5 N.J. 349 (1950); In re Perrone's Estate, 5 N.J. 514, 523 (1950).
This power is permissive and should be exercised sparingly. Vandenberg v. John De Kuyper & Son, 5 N.J. Super. 440 (App. Div. 1949). The findings of the trial judge on issues of fact, although not controlling, are by reason of his opportunity to determine the credibility of witnesses entitled to great weight. In re Fleming's Estate, 19 N.J. Super. 565 (App. Div. 1952).
The credibility of witnesses is an important consideration in the determination of factual issues. Gellert v. Livingston, 5 N.J. 65, 78 (1950); De Vries v. Evening Journal Ass'n, 9 N.J. 117 (1952).
Despite the fact that we might have reached a different factual conclusion, we are of the opinion that the trial judge's findings of fact are supported by competent, *186 relevant and reasonably credible evidence and are not inclined to make new and amended findings of fact.
We have considered the other points raised by the appellant and find no merit in the same.
The judgment of the court below is affirmed.
HALL, J., concurs in this opinion.
TOMASULO, J.S.C. (temporarily assigned) (dissenting).
I am compelled to disagree with my colleagues who affirm the holding of the district court. The statute, N.J.S. 2A:152-7 provides:
"Whenever any money, currency or cash shall be seized or captured by the police, constabulary or other officer in connection with any arrest for violation of or conspiracy to violate any gambling law of this state, the said money, currency or cash shall be deemed prima facie to be contraband of law as a gambling device, or as part of a gambling operation, and it shall be unlawful to return the said money, currency or cash to the person or persons claiming to own the same, or to any other person except in the circumstances and manner hereinafter provided."
Further, N.J.S. 2A:152-8 provides:
"Pending trial or ultimate disposition of the charge or charges, indictment or indictments, growing out of any arrest in connection with which any such money, currency or cash was seized or captured, the same shall be accounted for and deposited with the county treasurer of the county in which said arrest occurred, by and under the supervision of the prosecutor of the county."
It is provided in N.J.S. 2A:152-9:
"If the trial or other ultimate disposition of such charge or charges, indictment or indictments result in a record of conviction being entered against the person or persons so arrested as aforesaid, in connection with which arrest the said money, currency or cash was seized or captured, as aforesaid, then the county treasurer may, after 6 months from the date of the record of the entry of such conviction, make application, without prior notice, to the county court for an order to show cause why such money, currency or cash so seized or captured, shall not be forfeited to the sole use and gain of the county; such order to show cause shall then be served upon the person from whom said money, currency or cash was so seized or *187 captured, in accordance with the rules of practice and procedure. Upon the return of the said order, hearing shall be conducted in summary manner, and at such hearing proof of the conviction shall be prima facie evidence that the money, currency or cash so seized or captured was used in connection with the unlawful playing of any game wherein money or other things of value is wagered or gambled; provided, however, that proof, to the satisfaction of the court, shall first be established that no action or proceeding, then pending and undetermined, has been filed in any court of competent jurisdiction against said county treasurer seeking a recovery or return of the money, currency or cash so held in custody."
It is further provided in N.J.S. 2A:152-10:
"If the trial or other ultimate disposition of such charge or charges, indictment or indictments, result in an acquittal or other final termination of such proceedings in favor of the person or persons so arrested, as aforesaid, in connection with which arrest the said money, currency or cash was seized or captured, then the person or persons claiming to own the said money, currency or cash may within 2 years from the date of such acquittal or other final termination, in addition to any other remedy now provided by law, make application, on giving 10 days' prior notice thereof to the said county treasurer, to the county court of said county, for an order declaring such money, currency, or cash to be the property of such person or persons, and ordering the same to be returned by the said county treasurer. At any time after the expiration of said period of 2 years from the date of acquittal or other final determination, the county treasurer may make application to the county court for an order to show cause why such money, currency or cash so seized or captured shall not be forfeited to the sole use and gain of the county; such order to show cause shall then be served upon the person or persons from whom said money, currency or cash was so seized or captured, in accordance with the rules of practice and procedure. Upon the return of said order, hearing shall be conducted in summary manner; provided, however, that proof, to the satisfaction of the court, shall first be established that no action or proceeding, then pending and undetermined, has been filed in any court of competent jurisdiction, seeking recovery."
The three plaintiffs sub judice were admittedly gamblers who were participating and had participated in the gambling operation when the raid and arrests were made. Plaintiffs were charged with offenses under the municipal ordinances of the City of Paterson and each fined $200 upon guilty pleas. Four other individuals were indicted and pleaded guilty to the operation of a dice game in violation of N.J.S. 2A:112-3.
*188 My colleagues have concluded that the defendant had not shown the questioned monies to have been (a) an instrument of gambling (38 C.J.S., Gaming, § 78c, p. 136; Krug v. Board of Chosen Freeholders of Hudson County, 3 N.J. Super. 22 (App. Div. 1949); Rosen v. Superintendent of Police, 120 Pa. Super. 59, 181 A. 797 (Super. Ct. 1935); Fairmount Engine Co. v. Montgomery County, 135 Pa. Super. 367, 5 A.2d 419 (Super. Ct. 1939); People v. Moore, 410 Ill. 241, 102 N.E.2d 146 (Sup. Ct. 1951); Albright v. Karston, 209 Ark. 348, 190 S.W.2d 433 (Sup. Ct. 1945); Boyle v. State, 47 So.2d 693 (Sup. Ct. Fla. 1950)); (b) part of the gambling operation (38 C.J.S., Gaming, § 78c, p. 136, supra; Krug v. Board of Chosen Freeholders of Hudson County, supra; Kenny v. Wachenfeld, 14 N.J. Misc. 322 (Sup. Ct. 1936); Rosen v. Superintendent of Police, supra; Becker v. Farley, 137 N.J.L. 191 (E. & A. 1948); Fairmount Engine Co. v. Montgomery County, supra; People v. Moore, supra; People v. Del Mar Corp., 65 Cal. App.2d Supp. 854, 150 P.2d 826 (Super. Ct. 1944); People v. Rest, 345 Ill. App. 186, 103 N.E.2d 171 (App. Ct. 1952); Gilley v. Commonwealth, 312 Ky. 584, 229 S.W.2d 60, 19 A.L.R.2d 1224 (Sup. Ct. 1950); Commonwealth v. Certain Gaming Implements and Personal Property, 313 Mass. 409, 47 N.E.2d 939 (Sup. Jud. Ct. 1943); People v. Krol, 304 Mich. 623, 8 N.W.2d 662 (Sup. Ct. 1943); Pannulla v. Rosenberg, 171 Pa. Super. 233, 90 A.2d 267 (Super. Ct. 1952)); (c) earmarked and segregated as part of an illegal gambling operation (Kenny v. Wachenfeld, supra; State v. Link, 14 N.J. 446 (1954); Krug v. Board of Chosen Freeholders of Hudson County, supra); or (d) used per se in connection with the illegal gambling operation, and consequently subject to forfeiture as contraband under the statute (Kenny v. Wachenfeld, supra; People v. Krol, supra; Krug v. Board of Chosen Freeholders of Hudson County, supra).
The majority decision turns upon the unwillingness of its sponsors to disturb the factual findings of the court below, upon the well established rule referred to therein that although the Appellate Division is empowered to review the *189 evidence relating to the facts in cases, particularly where controversial issues are essentially factual, and make its own independent findings, that the court is not disposed, on appeal, to overthrow conclusions of the trier of the facts unless it is the court's conviction that such conclusions are so manifestly unsupported by or discordant with competent, relevant and reasonably credible evidence as to offend the interests of justice. Koolvent Aluminum Awning Co. of New Jersey v. Sperling, 16 N.J. Super. 444 (App. Div. 1951).
Additionally, the majority holding stems from its adherence to the legal principle that while under R.R. 1:5-3, of the Supreme Court, it may review issues of fact not determined by a finding of a jury and make new and amended findings of fact, due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. Lehmann v. Lehmann, 7 N.J. Super. 232 (App. Div. 1950), petition for certification denied 5 N.J. 349 (1950); In re Perrone's Estate, 5 N.J. 514, 523 (1950). And that this power, being permissive, should be exercised sparingly. Vandenberg v. John De Kuyper & Son, 5 N.J. Super. 440 (App. Div. 1949).
The plaintiffs are admittedly old-time gamblers. The record discloses a conviction for a similar offense prior to the one arising from the questioned seizure of the funds sub judice. Their presence at the gambling establishment here was admittedly for the purpose of engaging in a gambling operation. Indeed, they admitted what it was impossible for them to deny  that they had engaged in gambling. As to the questioned funds, they state that at the time of seizure the said funds had been removed from the arena of gambling and comprised lawful funds, immune from seizure under the statute. By what measuring stick are we to scrutinize or weigh their testimony? Are we to accept statements and evidence from them as to subjective matters solely within the confines of their minds and beyond the reach and challenge of sharp cross-questioning or even a most searching examination by the defendant's attorney? Are we *190 to look elsewhere in the record for a more objective method of measuring truth and weighing facts? Here the statute gives rise to a presumption (N.J.S. 2A:152-7) that any money seized by the police in connection with any arrest for violation of or conspiracy to violate any gambling law of this State, shall be deemed to be contraband, etc. It is unnecessary under the statute that those indicted for violating the statute should have been the persons whose money was seized. It is sufficient if the funds were seized in connection with any arrest for violation of the statute. I gather this from a reading of the statute in its entirety, and more particularly N.J.S. 2A:152-10, supra. The statute is meticulously careful to differentiate between the trial or other ultimate disposition of such charge, etc.  of the "person or persons so arrested," and "the person claiming to own the money." Faced with the prima facie presumption furnished by the statute, it is the obligation of the plaintiffs to give evidence of such a character as to overcome the presumption. The most serious conflict in the testimony surrounded the manner in which the prosecutor came into possession of the funds. Plaintiffs claimed the funds were forcibly taken from their respective persons. While normally the number of witnesses on one side is not necessarily controlling as to the weight and credibility to be given to the testimony, yet in circumstances such as in the case at bar, great regard should be given to the character and interest of the witnesses in the outcome of the litigation. So considered, I find it difficult to believe the plaintiffs as to this issue as against the diametrically opposed testimony of the prosecutor, his assistant, members of the detective staff and State Police officers. In the instance of the prosecutor and his assistant, we are dealing with officers of this court whose testimony is acceptable to me as against that of the plaintiffs. I am constrained to feel, therefore, that the plaintiffs' story in its entirety is untrue and that consequently, they have failed to overcome the presumption created by the statute. Even assuming that the plaintiffs were not shouldered with the burden of proof of overcoming the presumption, I am nevertheless inclined *191 to view the testimony of the defendants, men of good character, whose sole interest in the subject matter is motivated by a desire to discharge their obligations as law enforcement officers, as being entitled to prevail as against the testimony of the plaintiffs  men of questionable record, and motivated by self-interest.
I hold that the situation sub judice is one which lends itself to the discretionary exercise of the power of this court to review and amend the findings of fact of the trial court. Gellert v. Livingston, 5 N.J. 65, 78 (1950); De Vries v. Evening Journal Ass'n, 9 N.J. 117 (1952). And this because the ends of essential justice require that this be done. Temple v. Storch Trucking Co., 3 N.J. 42 (1949); Midler v. Heinowitz, 10 N.J. 123 (1952); Spindler v. Universal Chain Corp., 11 N.J. 34 (1952); Hagerman v. Lewis Lumber Co., 13 N.J. 315 (1953). The judgment of the district court should be reversed.