STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEO LINK, ALSO KNOWN AS J. W. DONALDSON, DEFEND-ANT-APPELLANT, AND VIOLET LINK, HIS WIFE, RE-SPONDENT-APPELLANT, JOHN E. SELSER, RESPOND-ENT-APPELLANT, AND BRUCE E. LAMBERT, DIRECTOR OF INTERNAL REVENUE, RESPONDENT.

Argued January 18, 1954—Decided February 8, 1954.

*Mr. Albert S. Gross* argued the cause for appellants Leo Link, Violet Link and John E. Selser.

*Mr. Milton T. Lasher* argued the cause for A. Theodore Holmes, as County Treasurer of the County of Bergen.

The opinion of the court was delivered by

WACHENFELD, J.   The query presented is whether the currency seized by law enforcement authorities in the execution of a search warrant directed to the residence of Leo Link, an admitted bookmaker, who later pleaded *non vult* to an indictment charging him as such, was properly forfeited to the State.

The seizure was made from a wall safe in Link's residence, where he concededly conducted part of his bookmaking operations.   The circumstances were as follows:

The sole occupation of Leo Link, alias J. W. Donaldson, in 1950 and for a long time prior thereto, was bookmaking. He received and paid off bets over the Western Union Telegraph system.   Originally he operated and resided in Hudson County but moved from Jersey City to 479 Beatrice Street, Teaneck, Bergen County, New Jersey, in 1943 with his wife Violet Link and his mother-in-law Louise Schanals.

In 1947 and thereafter he carried on his bookmaking activities through the Passaic office of the Western Union Telegraph Company.   He received bets by telegraph from all parts of the country, but the main volume of this illegal

business was transmitted to and emanated from the office of the telegraph company in Bridgeton, Cumberland County.

In June 1948 the police authorities of Cumberland County initiated an investigation in reference to the operations of the telegraph company at Bridgeton. It was disclosed that wagers on horse races were sent by telegraph from Bridgeton to Link, using the name of Donaldson, in Passaic County, and to C. J. Rich & Company in Illinois, and the winnings were sent to Bridgeton by telegraph money orders.

In April 1950 a Deputy Attorney General and other law enforcement officials raided the telegraph office, seized and impounded the many messages referring to horse race bets. The grand jury of Cumberland County on June 5, 1950 indicted the company and Frake, its manager, for maintaining a disorderly house at the Bridgeton office. Both defendants were convicted after trial and the judgment was affirmed on appeal. *State v. Western Union Telegraph Co.*, 12 *N. J.* 468 (1953).

The evidence in that case indicated that on frequent occasions there were 20 to 25 people in the office sending telegrams to Donaldson and that approximately 8,000 money orders issued out of the Bridgeton office to Donaldson in Passaic County and Rich & Company during the six months commencing with November 1949.

Another indictment was returned against the company, Frake and Donaldson, alias Link, who were charged with conspiracy to make book.

On October 23, 1950, pursuant to a search warrant issued for that purpose, a number of law enforcement officials, headed by Mr. Stamler, then a Deputy Attorney-General of the State, went to the Beatrice Street, Teaneck, address and there seized $127,000 in United States currency which they discovered, as already alluded to, in a safe recessed in a wall of the basement adjacent to a room where Link had a desk and a telephone from which he had apparently directed his bookmaking activities.

In the safe the raiding party found a warehouse receipt which led them to a warehouse in Palisades Park, Bergen

County, where they took possession of records of a book-making operation conducted at the Teaneck residence.

No arrests were made for the ostensible reason that the appellant Leo Link had, prior to October 23, 1950, been arrested and admitted to bail to answer separate charges for violation of bookmaking statutes in Cumberland County and Passaic County.

On May 31, 1951 Link was indicted by the Bergen County grand jury for violating the gambling laws on April 24, 1950 and divers other dates at Teaneck, New Jersey.

He pleaded *non vult* to this indictment on June 20, 1952, at which time the prosecutor apprised the court that the defendant had been indicted in Passaic County and in Cumberland County for "what is tantamount to the same offense." Link's counsel then said:

"I admit that Mr. Link was operating, or was associated in the operation, of a bookmaking activity prohibited by the statute. There was a single operation as has been indicated by the Attorney General. I am willing that a plea of *non vult* shall go in one jurisdiction, because it was one offense. I have indicated to the Attorney General that it makes very little difference to me whether it is in Bergen County, Passaic County, or Cumberland County."

Upon the entering of the plea of *non vult* in Bergen County, the indictments in Passaic County and Cumberland County were *nolle prossed*.

On June 27, 1952 Link was sentenced to a jail term and a fine.

On June 24, 1952 Louise Schanals, Link's 79-year-old mother-in-law, instituted suit against the County Treasurer of Bergen County in an attempt to recover the $127,000 of seized currency, and in her answers to interrogatories in that litigation she asserted $80,000 of this money belonged to her, $27,000 to her daughter Violet Link, and $20,000 to Leo Link. The case was duly tried before a jury and a verdict of no cause of action was returned.

In her depositions Mrs. Schanals testified the cash was received by her as gifts from her husband, who died in

February 1936. She did not know the amount of his annual income, but the proof in reference thereto indicated Mr. Schanals' last position paid an annual salary of $2,100. There was other evidence in reference to his financial status which made the claim of accumulating that amount of money from his income rather fantastic.

After the entry of judgment, an order was issued requiring the appellants to show cause why the currency in the possession of the county treasurer should not be forfeited "to the sole use and gain of the County of Bergen." The hearing came on before Superior Court Judge Leyden, who had issued the original search warrant, received the indictment handed down against Link, taken his plea, imposed sentence, and also had presided at the trial of Mrs. Schanals' action.

Both counsel agreed upon the record that the trial court was to take judicial notice of the pleadings, the testimony, the verdict and the judgment in the case of Mrs. Schanals against the county treasurer and also of the indictment against Leo Link, his plea thereto and his sentence thereon.

The interest now claimed in the money varies widely from that originally made, and it is obvious the alleged ownership heretofore asserted mirrored the consciousness of the forfeiture proceedings which would inevitably be encountered. Leo Link now contended he owned $82,000, Violet Link $20,000, while $25,000 had been assigned by all of the appellants to John E. Selser for professional services rendered and to be rendered.

At the hearing no additional proof was offered except the testimony of Violet Link, in which she attempted to establish her ownership of $20,000 of the fund by claiming it had accumulated from gifts and savings over a period of 30 years.

The court found her testimony vague and unsatisfactory and accordingly entered an order forfeiting the amount seized "to the sole use and gain of the County of Bergen as contraband of law as part of the gambling operation of the defendant Leo Link."

From the order so made, an appeal was taken to the Appellate Division and certified here on our own motion.

The common and decisional law of our State is reflected in *N. J. S. 2A* :152–7–8–9–10, the statute giving authority for the proceedings here under review.  Section 7 reads as follows:

"Whenever any money, currency or cash shall be seized or captured by the police, constabulary or other officer in connection with any arrest for violation of or conspiracy to violate any gambling law of this state, the said money, currency or cash shall be deemed *prima facie* to be contraband of law as a gambling device, or as part of a gambling operation, and it shall be unlawful to return the said money, currency or cash to the person or persons claiming to own the same, or to any other person, except in the circumstances and manner hereinafter provided."

Section 8 relates to the disposition of the money pending trial.  Section 9 directs the forfeiture of the money to the sole use of the county in the event of a conviction, while section 10 covers its return to the rightful owner if an acquittal occurs.

Admittedly the seizure of money is justified where the crime charged is a violation of *R. S.* 2 :135–3 and the money is earmarked and segregated as part of a gambling operation.  It then constitutes a gambling device as determined in *Kenny v. Wachenfeld, 14 N. J. Misc.* 322 (*Sup. Ct.* 1936); *Krug v. Bd. of Chosen Freeholders, 3 N. J. Super.* 22 (*App. Div.* 1949); *Farley v. Manning, 4 N. J.* 571 (1950).

The appellants in their brief concede that "viewed in its most baneful aspect, the bundled currency secreted in the basement safe was the fruit of illicit activity," but claim it was not as such contraband of law since it was not seized in connection with an arrest, nor was it shown to have been earmarked and segregated as part of a gambling operation then and there being committed.

True, no arrest was made at the time of the seizure, but Link had already been apprehended prior to that time on a charge of bookmaking and was admitted to bail pending trial.

Simultaneous arrest and seizure are not required by the statute; seizure must be "in connection with any arrest for violation of  *  *  *  any gambling law of this state,"

but there is no requirement as to when the arrest must take place. The statutory qualifications are complied with if it appears the arrest was in connection with a violation of the gambling law.

■ The statute was enacted to discourage and prevent unlawful gambling, and the courts will not construe an enactment in such fashion as to charge the Legislature with deliberately rendering impotent the clear and unambiguously expressed intention of the whole act. *Grogan v. DeSapio,* 11 *N. J.* 308 (1953).

Assume the defendant, forewarned of an impending raid, flees the jurisdiction and thus escapes, but the authorities, pursuing the search warrant, find abundant and undisputed evidence of extensive gambling, including money required to pay off bets where the wheel of fortune gives a negative answer, plus other customary paraphernalia employed in such operations. Does it mean the fruits of the illicit gambling manipulation become immune from seizure and forfeiture simply because the violator was more nimble of foot than those cloaked with authority who sought to preserve law and order?

■ Before such a construction could be adopted, the wording would have to be positive, emphatic and unmistakable. A statute will not be construed contrary to the over-all purpose envisioned by the Legislature as it is discerned from the context of the entire mandate, and restrictions or limitations not specifically contained therein will not be added by judicial interpretation, especially if they are prejudicial to the public good.

■ The statute embodies a rule of evidence formulated to facilitate gambling prosecutions by constituting the money so captured as *"prima facie* to be contraband of law as a gambling device," and its primary purpose is to deter gambling violations. The appellants' construction would culminate in easy and frequent evasions of the enactment adopted; would be a perversion of the legislative intent, and contrary to the usual rule of construction that legislation must be accorded a rational interpretation consistent with its mani-

fest purpose. *Grobart v. Grobart*, 5 *N. J.* 161 (1950); *Central R. R. Co. of N. J. v. Director, Division of Tax Appeals*, 8 *N. J.* 15 (1951).

Here Link's prior arrest, his undisputed unlawful gambling activities and his subsequent conviction all persuade us the seizure was "connected" with his arrest for the violation of gambling statutes.

Another phase of this cause weighs heavily in favor of the respondent. The order in the forfeiture proceedings recites that the confiscation was directed in accordance with the finding of fact made by the court, which found, amongst other things:

"The proof seems to indicate that if it is anybody's money it is Link's money, and it was money used either as the proceeds of or in connection with, set apart and segregated, as part of his gambling operations in this county, Cumberland County and Passaic County, and I think the conclusion is inevitable then that the money is forfeited to the sole use of the County of Bergen."

It became a question of fact for the court to decide in light of all of the evidence and circumstances if the money was received and held for use in an unlawful gambling operation. *State v. Morano*, 134 *N. J. L.* 295 (*E. & A.* 1946). Whether the currency was earmarked or segregated for gambling purposes has been held to be a factual issue. *Becker v. Farley*, 137 *N. J. L.* 191 (*E. & A.* 1948).

Here there is ample evidence in the record before us warranting the factual conclusion decided by the trial court, and we see nothing in the record to justify a disturbance of it.

If the money was contraband when it was seized, it still remained contraband despite the failure to arrest at the precise time the currency was impounded. Its legal status was not changed by such an omission. Another arrest would have been surplusage and of no significance, the defendant already being in custody of the court by reason of his previous apprehension.

The judgment for forfeiture below is affirmed.

*For affirmance*—Justices Heher, Oliphant, Wachenfeld, Burling, Jacobs and Brennan—6.

*For reversal*—None.