88 N.J. Super. 330 (1965)
212 A.2d 192
THE STATE OF NEW JERSEY, PLAINTIFF.
v.
JOSEPH P. LaBELLA, DEFENDANT.
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
JULIA HERNANDEZ, FELIX ALBARADO, HIPOLITO HERNANDEZ PAGAN, ALSO KNOWN AS HIPOLITO HERNANDEZ, AND BERNARDO FIGUEROA, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division-Criminal.
Decided June 28, 1965.
*332 Mr. Donald H. Mintz for defendant LaBella.
Mr. Howard F. Skarbnik for defendant Hipolito Hernandez Pagan, also known as Hipolito Hernandez (Messrs. Skarbnik & Skarbnik, attorneys).
Mr. William R. Ferlanti for plaintiff (Indictment Nos. 1120-63 and 1121-63) (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
*333 Mr. Martin G. Holleran for plaintiff (Indictment No. 2361-63) (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. William J. Straub for County of Essex (Mr. Nicholas T. Fernicola, attorney).
CONKLIN, J.S.C.
These cases have been combined for decision because they present the same legal issues in essentially the same factual settings. Both cases involve valid seizures of money from persons subsequently indicted, tried and acquitted of charges involving violations of certain gambling laws of this State. After the acquittals, the acquitted persons brought actions seeking a return of the seized monies under N.J.S. 2A:152-10. No outside party submitted any claim to the funds. The county treasurer opposed the actions, contending that he was entitled to demonstrate that the monies were connected with gambling activities and thus subject to forfeiture. He further contended that the acquitted party had the burden of showing a legitimate non-gambling use or connection for the money before he was entitled to its return. Testimony was adduced in both cases in the same manner: police officers testified as to alleged gambling activities and the acquitted party testified as to a legitimate business or personal use for which the money was earmarked. An evaluation of the testimony is unnecessary to a decision in these cases, since, upon reflection, the court concludes, as hereinafter set forth, that testimony, other than testimony as to ownership of the monies, was not vital to a proper disposition of these cases.
This proceeding is governed generally by N.J.S. 2A:152-7 to 10, and specifically by section 10 since there was an acquittal of the charge. Section 10 provides:
"If the trial or other ultimate disposition of such charge or charges, indictment or indictments, result in an acquittal or other final termination of such proceedings in favor of the person or persons so arrested, as aforesaid, in connection with which arrest the said money, currency or cash was seized or captured, then the person or *334 persons claiming to own the said money, currency or cash may within 2 years from the date of such acquittal or other final termination, in addition to any other remedy now provided by law, make application, on giving 10 days' prior notice thereof to the said county treasurer, to the county court of said county, for an order declaring such money, currency or cash to be the property of such person or persons, and ordering the same to be returned by the said county treasurer. At any time after the expiration of said period of 2 years from the date of acquittal or other final determination, the county treasurer may make application to the county court for an order to show cause why such money, currency or cash so seized or captured shall not be forfeited to the sole use and gain of the county; such order to show cause shall then be served upon the person or persons from whom said money, currency or cash was so seized or captured, in accordance with the rules of practice and procedure. Upon the return of said order, hearing shall be conducted in summary manner; provided, however, that proof, to the satisfaction of the court, shall first be established that no action or proceeding, then pending and undetermined, has been filed in any court of competent jurisdiction, seeking recovery."
The question which arises out of the construction of this language is whether or not the county treasurer is entitled to show the money in question was used as part of a gambling operation notwithstanding the fact that all persons arrested in conjunction with the seizure of the money have been ultimately cleared of the gambling charges.
The county treasurer argues that this is a civil proceeding separate from the criminal prosecution and the question of whether there was a "gambling operation" may be relitigated under section 10 of the act. He states, further, that the statute endows him with a continuing presumption that the money was used for gambling. This latter argument is based on the language of section 7 that any money seized in connection with an arrest for violation of any gambling law "shall be deemed prima facie to be contraband of law as a gambling device * * * and it shall be unlawful to return the said money * * * except [as] hereinafter provided."
There are no reported cases in New Jersey which construe section 10. In Farley v. Manning, 4 N.J. 571 (1950), the defendant was acquitted of the charges against him, but section 10 was not discussed since the county did not claim any interest in the money seized.
*335 The recent case of McGill v. County of Essex, 87 N.J. Super. 367 (Law Div. 1965), held that a person against whom no indictment had been returned was not entitled to a return of her seized monies. Such a situation appears to be outside the statutory scope of N.J.S. 2A:152-10 since the failure of the grand jury to indict is not an "ultimate disposition" of a criminal charge. Rosetty v. Hamilton Tp. Com., 82 N.J. Super. 340 (Law Div. 1964). Cf. State v. Josephs, 79 N.J. Super. 411 (App. Div. 1963).
McGill discussed the policy underlying the statute, nonetheless, and quoted at length from State v. Link, 14 N.J. 446 (1954). Link involved money seized from an admitted bookmaker, and its holding was merely that a seizure need not be made at the same time as an arrest in order to cause a forfeiture of the money. The combination of Link's conviction and past record was the factor that persuaded the court that the seized funds were "gambling connected."
In Spagnuolo v. Bonnet, 16 N.J. 546 (1954), certain money was seized in a lottery raid on the Spagnuolo home. A. Edward Spagnuolo subsequently pleaded non vult to a lottery indictment. His mother then instituted suit for a return of the monies. In holding that the mother could not recover the seized money, the court examined the prima facie presumption that the money was deemed to be contraband and stated that the Legislature intended the presumption to be a rule of evidence "to be used in the trial of the claim of property created by the act." The court found that such presumption "places the burden upon the claimant of coming forward with evidence to overthrow it." These statements, however, must be viewed in the context in which they were stated. The language in Spagnuolo was directed at a non vult situation and cannot be said to be equally applicable to an acquittal situation.
In Pratico v. Rhodes, 17 N.J. 328 (1955), the court concluded that convicted gamblers had not overcome the prima facie presumption of N.J.S. 2A:152-7 in their action for return of monies. It is noteworthy that the court stated: *336 "Of course, there must be a connection between the money seized and the gambling operation." (at p. 337) It is implicit in this language that the court requires a proven gambling operation before it will require forfeiture of seized monies. Once again the critical question is whether or not the existence of a gambling operation may be relitigated in the forfeiture proceeding.
The dissent in the Appellate Division in Pratico interestingly enumerates four ways in which seized monies could be deemed gambling-connected. They are: (a) as an instrument of gambling; (b) as part of the gambling operation; (c) earmarked and segregated as part of an illegal gambling operation, or (d) used per se in connection with the illegal gambling operation. Each of these items has as its crucial condition precedent the proven existence of "gambling" or an "illegal gambling operation." Is it not just to assume that if an illegal gambling operation existed it would have been demonstrated at a criminal trial of that issue and, barring such a determination, there is no illegal activity with which the seized monies may be connected?
In no reported case has a county treasurer claimed seized monies of an acquitted defendant. No case specifically carries the presumption of N.J.S. 2A:152-7 forward into a proceeding brought by an acquitted claimant under N.J.S. 2A:152-10. All but the Farley case involved proven gambling operations wherein the ultimate dispositions were either guilty or non vult pleas or convictions. See the cases collected in Pratico v. Rhodes, 32 N.J. Super. 178 (App. Div. 1954), and other cases cited herein.
The separate sections of this statute must be read in pari materia. Spagnuolo v. Bonnet, supra. N.J.S. 2A:152-7 designates money seized in connection with any arrest for gambling prima facie to be contraband of law and prohibits its return to any person except as the following sections provide. N.J.S. 2A:152-8 requires the county treasurer to hold and account for the seized money pending trial. Section 10 has already been recited, supra. Section 9 provides as follows:
*337 "If the trial or other ultimate disposition of such charge or charges, indictment or indictments result in a record of conviction being entered against the person or persons so arrested as aforesaid, in connection with which arrest the said money, currency or cash was seized or captured, as aforesaid, then the county treasurer may, after 6 months from the date of the record of the entry of such conviction, make application, without prior notice, to the county court for an order to show cause why such money, currency or cash so seized or captured, shall not be forfeited to the sole use and gain of the county; such order to show cause shall then be served upon the person from whom said money, currency or cash was so seized or captured, in accordance with the rules of practice and procedure. Upon the return of the said order, hearing shall be conducted in summary manner, and at such hearing proof of the conviction shall be prima facie evidence that the money, currency or cash so seized or captured was used in connection with the unlawful playing of any game wherein money or other thing of value is wagered or gambled; provided, however, that proof, to the satisfaction of the court, shall first be established that no action or proceeding, then pending and undetermined, has been filed in any court of competent jurisdiction against said county treasurer seeking a recovery or return of the money, currency or cash so held in custody." (Emphasis added)
Sections 9 and 10 thus provide the means mentioned in section 7 for disposition of the monies seized. If there is a conviction, section 9 controls, while in the event of an acquittal, section 10 is controlling. Spagnuolo v. Bonnet, supra. It would appear that the presumption created in section 7 that the money seized is contraband drops out upon a disposition resulting in conviction or acquittal. The reassertion of the presumption in section 9 (italicized, supra) and the absence of such a reassertion in section 10 is further evidence of the legislative intent to carry the presumption forward only to the point of acquittal or other ultimate disposition in favor of the arrested person and not to have this presumption apply in a situation such as the cases sub judice.
The plain meaning of section 10 merely provides a procedure whereby the money seized may be returned to the rightful owner in case of acquittal. The county treasurer may get indefeasible title under this section only if no claims are made by the rightful owner within two years of the acquittal. See, for example, State v. Johnson, 20 N.J. Super. 468 (Cty. Ct. 1952). When section 10 was enacted in L. 1941, c. 70, and *338 amended L. 1945, c. 296, the statement appended to the bill read as follows:
"This bill provides a method by which the county treasurer may proceed to have funds which are confiscated in connection with gambling charges, appropriated to the county after acquittal or other determination of the charges and after persons claiming to own same have had six months [now 2 years] in which to make such claims. The present law provides for a similar method of appropriation by the county after conviction, but makes no provision for appropriation of funds by the county after acquittal or other determination." (Emphasis supplied)
The statement indicates a recognition that the section was needed to give the county a right to the funds in the event of acquittal but only after the time period specified had run.
This interpretation was somewhat recognized in State v. Link, supra, wherein the court simply stated, "Section 10 covers its return to the rightful owner if an acquittal occurs." (14 N.J., at p. 452)
Additionally, the result contended for by the county treasurer is a forfeiture of property. Spagnuolo v. Bonnet, supra. It is a basic rule of statutory construction that a statute creating a forfeiture is penal in nature and must be strictly construed. Sutherland, Statutory Construction (3d ed. 1943), §§ 5603, 5604. All elements of doubt must be resolved in favor of the person against whom the forfeiture is sought. Crawford, Statutory Construction, § 240 (1940).
The statute is not definitively clear regarding the role of the county treasurer under a section 10 proceeding. While, under the analysis made above of our statute and the New Jersey cases, he would appear to be precluded from relitigating the "gambling operation" question, it is well to consider certain cases decided in the federal court system on such a question.
The federal courts have treated forfeiture actions in various ways: as civil actions, quasi-criminal actions and in rem actions essentially civil. This latter treatment was applied in an early landmark case in the forfeiture field, Coffey v. *339 United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886), rehearing denied 117 U.S. 233, 6 S.Ct. 717, 29 L.Ed. 890 (1886). The United States had sought forfeiture of the distilling apparatus and spirits seized by a marshal from Coffey when he was arrested for attempting to defraud the United States of the tax on spirits distilled by him, and for other violations of the internal revenue laws. Coffey was indicted, tried and acquitted of the criminal charges and contended that such an acquittal was a bar to a forfeiture proceeding based on the commission of the same prohibited act. The court found that
"* * * the proceeding to enforce the forfeiture against the res named must be a proceeding in rem and a civil action, while that to enforce the fine and imprisonment must be a criminal proceeding. * * * Yet, where an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding, instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person, on the subsequent trial of a suit in rem by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit in rem."
Mitchell v. Commissioner of Internal Revenue, 89 F.2d 873 (2 Cir. 1937), limited the Coffey case, in the following manner:
"The only rule necessarily derivable from Coffey v. United States would seem to be that an acquittal in a criminal prosecution is a bar to a civil action to enforce fines or forfeitures of property which are in their nature criminal penalties. Though this rule seems hard to justify in view of the different degrees of proof required in order to establish criminal guilt and civil responsibility, it is implicit in the decision of Coffey v. United States which is binding on us in the absence of a modification by the Supreme Court."
However, Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), held that the differing degrees of proof in criminal and civil cases precluded the application of res judicata. But see Inman v. United States, 151 F. Supp. 784 (W.D.S.C., 1957).
*340 In United States v. A Lot of Precious Stones and Jewelry, 134 F. 61 (6 Cir. 1905), an acquittal of one defendant was held to bar a forfeiture action, but a nolle prosequi of another defendant was no bar since that defendant was still subject to subsequent indictment. Such a situation is directly analogous to the distinction made above between the instant case, an acquittal, and the situation in McGill v. County of Essex, supra, wherein no indictment was returned. Accord: Sierra v. United States, 233 F. 37 (1 Cir. 1916); United States v. 2,180 Cases of Champagne, 9 F.2d 710 (2 Cir. 1926). Contra: United States v. Manufacturing Apparatus, Oleo., Etc., 240 F. 235 (D. Colo. 1916) (third person rather than acquitted person claimed property).
One of the most recent cases discussing the nature of a forfeiture proceeding is One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, U.S., 85 S.Ct. 1246 (1965). The court stated that "a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." The court in that case found that the forfeiture proceeding was "clearly a penalty for the criminal offense."
Synthesizing the federal cases, the following rules seem apparent. First, a forfeiture proceeding is essentially quasi-criminal in nature since it is intimately related to certain criminal activity. An attempt to classify such a proceeding as purely civil is an unrealistic attempt to sever the proceedings surrounding a single criminal activity and to ignore the interrelation of prosecution and forfeiture proceedings. Secondly, an attempt to distinguish between prosecution and forfeiture proceedings on the basis of differing degrees of proof required due to the "civil" as opposed to criminal nature of the proceeding was rejected in Coffey and Mitchell, although accepted in Helvering. Coffey rejected the distinction because the issue presented in the civil suit was the same as that presented in the criminal trial  only the consequences of guilt varied. This rationale is equally applicable to the instant situation where no new issue is raised by the second proceeding. *341 Lastly, the federal cases indicate that an acquittal is not merely some evidence precluding forfeiture, but rather is a conclusive bar to a forfeiture proceeding where derivative contraband is concerned.
Applying the above analyses to the instant situations, the following conclusions are reached. The proceeding for a return of monies is essentially a litigation of the issue of whether or not seized monies will be forfeited to the county treasurer. As such, it cannot be said to be civil in nature but must be deemed, at the least quasi-criminal. Furthermore, the controlling statute, N.J.S. 2A:152-10, contains no presumption that the seized money is deemed to be contraband, nor is such a presumption carried forward from N.J.S. 2A:152-7. Rather, section 10 appears to be, and the legislative history bears this out, merely a method of legitimizing the county treasurer's ownership of the seized funds after two years have expired without an application for their return. If an application is made within time, section 10 appears to be purely a procedural guide to the return of funds once ownership has been shown. No provision is made in section 10 for a hearing, except in the case of the county treasurer's seeking an order to show cause why the money should not be forfeited to the county.
In the instant cases no gambling or gambling operation was shown at the trial of that issue. The county treasurer was not a party to the original prosecution, but as a subdivision of the State of New Jersey and member of the Essex County administrative scheme in companionship with the Essex County Prosecutor's Office, he is bound by the determination made therein. It is unnecessary to decide whether the county treasurer is "collaterally estopped" from relitigating the gambling issue, in the truest sense of that phrase; rather, it is sufficient to state that the previous acquittal bars a relitigation of the question of the existence of a gambling operation. The argument of the differing degrees of proof required in a criminal prosecution and civil proceeding, if not made moot by the determination that this proceeding is *342 quasi-criminal, is not persuasive in the light of Coffey's continued validity. In the absence of a New Jersey case denying the return of seized monies to an acquitted defendant, the county treasurer should be required to return such funds to an applicant upon a showing by such applicant that the statute has been complied with in terms of acquittal, timeliness and undisputed ownership. Accordingly, the county treasurer is hereby directed to return the funds that are the subject matter of these actions.
Let an order be entered in each case.