454 F.2d 1210
 Joseph STAPLETON, Treasurer of the County of Hudson, and the
County of Hudson, Plaintiffs-Appellees,
v.
TWO MILLION FOUR HUNDRED THIRTY-EIGHT THOUSAND, ONE HUNDRED
AND TEN DOLLARS ($2,438,110), and all persons
interested therein. Appeal of UNITED
STATES of America.
 No. 19287.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 5, 1971.
Decided Jan. 25, 1972.
 
 Bennet N. Hollander, Dept. of Justice, Tax Div., Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Stephen H. Hutzelman, Attys., Tax Div., Dept. of Justice, Washington, D. C., Frederick B. Lacey, U. S. Atty., on the brief) for defendants-appellants.
 Isadore Glauberman, Sp. Counsel, Jersey City, N. J. (William F. Kelly, Jr., Hudson County Counsel, Sheldon A. Weiss, Jersey City, N. J., on the brief) for plaintiffs-appellees.
 Before McLAUGHLIN, GANEY and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 GERALD McLAUGHLIN, Circuit Judge.
 
 
 1
 This is an appeal by the United States Government from a district court's decision awarding $2,438,110 to Hudson County, New Jersey. It is conceded that the money in question was the property of one Joseph V. Moriarty. Appellant maintains that the district court did not have jurisdiction to pass upon this case and should have dismissed it.
 
 
 2
 On July 3, 1962 some workmen were renovating private garages on Oxford Avenue, Jersey City, N. J. While so engaged they discovered $2,438,110 in the trunk of a 1947 Plymouth automobile parked in garage #48. Various other articles pertaining to Joseph V. Moriarty were also found in the garage. The F.B.I. was called to the scene and agents from that department took initial control of the money. On July 5, 1962 the District Director of Internal Revenue made a jeopardy assessment against Moriarty for income tax and interest due in the amount of $3,395,655.33. On July 9, 1962 the Government's notice of lien was filed in the Hudson County Register's Office and a notice of levy was served on the United States Marshal who had custody of the currency. On July 16, 1962 the money was turned over to the Internal Revenue Department by the United States Marshal and deposited in the National State Bank of Newark, New Jersey which is the depository for Internal Revenue collections for New Jersey. Within twenty-four hours the said funds were credited to the account of the Secretary of the Treasury in the Federal Reserve Bank of New York and thus covered into the United States Treasury.
 
 
 3
 On September 24, 1962, Hudson County filed a complaint in the Superior Court of New Jersey, Law Division, Hudson County, seeking a judgment that the money be forfeited to the County of Hudson by reason of its being contraband pursuant to N.J.Stat.Ann. Sec. 2A:152-9.[1] The complaint named Chris L. Gross, the District Director of Internal Revenue, as one of the claimants to the fund, by reason of the fact that he had served a notice of levy on the Prosecutor of Hudson County, claiming a lien on all property owned by Moriarty.
 
 
 4
 On October 16, 1962 Mr. Gross filed a petition for removal in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. Sec. 1442 (a) (1)[2] on the grounds that the proceeding in the state court was an action commenced against an officer of the United States for an act performed under color of office. The suit was so removed. Hudson County tried to have the litigation remanded to the state court. That motion was denied on April 3, 1963. Thereafter, on February 17, 1964, the County filed a supplemental complaint and subsequently filed amendments to that supplemental complaint, one of which substituted the United States as a party defendant. The trial judge found that Hudson County was entitled to the money. The United States appeals from that decision.
 
 
 5
 Admittedly, the suit was originally commenced in the Superior Court of New Jersey and later removed to the Federal District Court. The jurisdiction of the federal court over a cause removed from the state courts is derived from the question of the state court's jurisdiction; if the state court lacked jurisdiction of subject matter or parties, then the federal court acquires none, even though it might have jurisdiction in a like claim first brought in the federal system. See Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922); A. J. Curtis and Company v. D. W. Falls, Inc., 305 F.2d 811 (3rd Cir. 1962); Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). Therefore the problem which must be resolved is, did the Superior Court of New Jersey have jurisdiction over this claim prior to it being removed to the federal court?
 
 
 6
 The money involved was taken by agents of the Federal Bureau of Investigation to be counted and remained in charge of federal officials until it was ultimately deposited in the Treasury of the United States. At no time in fact or in law did state or local officers possess custody or control of the currency; the state court simply never did have jurisdiction over the subject matter. The situation before us is in no way similar to United States v. Bleasby, 257 F.2d 278 (3rd Cir. 1958) where county officials seized money used in gambling, as contraband and maintained possession of it. The holding there was that the New Jersey court had possession over the res and exerted valid in rem jurisdiction which could not be collaterally attacked by the United States in its effort to establish priority for its tax lien. Under the facts here the said money was never in the control of County or State officials.
 
 
 7
 The district court in its opinion claimed in personam jurisdiction to decide this litigation stating "However, this Court is not convinced that this suit is merely an in rem action erroneously commenced. To the contrary, there is strong reason to believe that this suit is purely an in personam matter seeking to determine the rightful owner of money found in the Jersey City garage. United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1937) holds that a State has a right to adjudicate the title to a fund in possession of the United States Treasury on an in personam basis. Such an adjudication could only designate the rightful claimants to the fund, but could not control its distribution."
 
 
 8
 Based upon that erroneous reasoning the district court concluded that under the authority of the Klein opinion, supra, a state court has the right to determine the ownership of funds in the possession of the United States Treasury, even though that court could not order a government official to deliver possession of the funds to anyone. In that situation the prevailing party would have to go to a federal court for enforcement of the decree. The truth is that what Klein establishes is that a state court may determine rights to property on an in personam basis only where the United States has custody of the funds as a mere stakeholder and that the state court lacks the power to act where the United States claims an interest in the property at issue.
 
 
 9
 Klein dealt with the constitutionality of certain statutes of the Commonwealth of Pennsylvania purporting to confer jurisdiction on a state tribunal to declare the escheat of money deposited in the registry of the federal court and later covered into the Treasury of the United States. The circumstances surrounding that claim are as follows: The District Court for the Eastern District of Pennsylvania found that certain bondholders were entitled to specific sums. All monies due bondholders who could not be located were paid into the registry of the court. Five years later all unclaimed sums were transferred to the United States Treasury. The Escheator of the Commonwealth of Pennsylvania sought to escheat these funds and so petitioned the district court. The court dismissed the petition without prejudice on the grounds that petitioner had not yet procured a declaration of escheat, which was necessary to perfect the Commonwealth's title, and that the district court was without jurisdiction to make such a declaration. Thereafter an action was begun in the Court of Common Pleas praying a declaration that the fund had escheated to the Commonwealth. Eventually the court entered a decree of escheat and directed the Escheater to apply to the United States District Court for an order that the monies be paid him as Escheator. This decision was affirmed by the Pennsylvania Supreme Court. The Supreme Court of the United States also affirmed this decision in United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1937).
 
 
 10
 In that opinion Justice Stone writing for the Court carefully noted that "The Government does not, in pleading or argument, set up any right, title or interest in the present fund adverse to the unknown bondholders. It does not contend that the fund has been or can be escheated to the United States." United States v. Klein, supra, at p. 280, 58 S.Ct. at 538. He went on to say: "The present decree for escheat of the fund is not founded on possession and does not disturb or purport to affect the Treasury's possession of the fund or the District Court's authority over it. Nor could it do so . . . At most the decree of the state court purports to be an adjudication upon the title of the unknown claimants in the fund by a proceeding in the nature of an inquest of office as in the case of escheated lands, . . . and to confirm the authority of appellee to make claim to the moneys." United States v. Klein, supra, at p. 282, 58 S.Ct. at 539.
 
 
 11
 The facts before us are wholly distinguishable from those in United States v. Klein. The vitally important distinction between the two is that the Government had no claim to the money in the Klein action. It was merely a stakeholder waiting for the owner to appear. Since the funds were not claimed, the money could escheat to the state though it was in the United States Treasury. The money in this appeal is in the United States Treasury but the Government is not holding it as a stakeholder but as owner thereof by reason of having taken possession of it in satisfaction for taxes due. It is settled law that a suit directly concerning the title to property in which the United States has an interest is a suit against the sovereign which absent the consent of the sovereign, cannot be maintained in the state court. In comparable circumstances Chief Judge Biggs held for this court, that "It is settled that a suit directly involving the title of property in which the United States claims an interest is a suit against the sovereign.[13] Hence the suit in the Court of Common Pleas is against the sovereign, the United States. But since the sovereign has not consented to be sued in the Pennsylvania tribunal, that Court lacks jurisdiction or the power to adjudicate the issues presented.[14] " In Re Escheat of Monies Deposited in United States District Court, 187 F.2d 131, 135 (3rd Cir. 1950), footnotes including great number of supporting cases, omitted.
 
 
 12
 Appellee contends that the filing of the supplemental complaint and subsequent amendments by the County gave the Federal Court jurisdiction of the litigation and the parties, irrespective of whether the state court from which it had been removed had jurisdiction. In support of this theory Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) is cited as holding that the District Courts have, after removal "the full arsenal of authority with which they have been endowed." Freeman v. Bee Machine Co., supra at 452, 63 S.Ct. at 1148. Appellant omits the all important difference between Freeman and this appeal. In Freeman, the State Court, before the removal of the case to the federal system, had proper jurisdiction. In fact that court held that "Congress has indeed provided that in a suit which has been removed the District Court shall 'proceed therein as if the suit had been originally commenced in said district court, and the same proceedings had been taken in such suit in said district court as shall have been had therein in said State court prior to its removal.' Judicial Code Sec. 38, 28 U.S.C. Sec. 81. While that section does not cure jurisdictional defects present in the state court action, it preserves to the Federal District Courts the full arsenal of authority with which they have been endowed." Freeman v. Bee Machine Co., 319 U.S. 448, 452, 63 S.Ct. 1146, 1148, 87 L.Ed. 1509 (1943). It is obvious from the above that before the district court can allow the filing of amendments and supplemental complaints it must have jurisdiction, and the filing of these does not remedy any defect in the state court's jurisdiction prior to removal. There is no authority in the federal court to permit appellee, under the guise of filing an amended petition, to eliminate the patent jurisdictional defects of the state court action. See Henderson v. Shell Oil Co., 173 F.2d 840 (8th Cir. 1949). Since the state court concededly lacked jurisdiction, the District Court could acquire none on removal and this claim should have been dismissed.
 
 
 13
 A second major error appears in the disposal of this claim by awarding the currency to Hudson County. The two statutes controlling the forfeiture of funds in this type of case are N.J.S.A. 2A:152-6[3] and N.J.S.A. 2A:152-7[4] Hudson County founded its alleged right on the former statute. It had previously been held that N.J.S.A. 2A:152-6 was applicable to money where it had been earmarked and segregated as part of a gambling operation, such money constituted a gambling device and was contraband. See Spagnuolo v. Bonnett, 16 N.J. 546, 109 A.2d 623 (1954). While N.J. S.A. 2A:152-7 is primarily concerned with the seizure of currency, property of that sort when seized in connection with an arrest will be deemed prima facie to be contraband of law as a gambling device. Thus that statute so establishes a presumption that the money is contraband, a presumption which must be overcome by a contesting party. N.J.S.A. 2A:152-6 does not deal with any such presumption. The District Court, on plaintiff's urging, held that the County was entitled to the benefits of N.J.S.A. 2A:152-7 with the above described presumption which was not rightfully in this litigation at all. This entire claim depended solely upon N.J.S.A. 2A:152-6 which would have correctly forced Hudson County to prove that the money was an implement or device made or used for the purpose of gambling. There was no acceptable proof to that effect offered by this plaintiff.
 
 
 14
 A statute creating a forfeiture is penal in nature and must be strictly construed. See State v. La Bella, 88 N.J. Super. 330, 212 A.2d 192 (1965). The New Jersey Supreme Court in a case dealing with the construction of Section 2A:152-7 has held that the arrest need not occur simultaneously with seizure for there to be a forfeiture of gambling funds. See State v. Link, 14 N.J. 446, 102 A.2d 609 (1954). It has also held that the forfeiture occurred at the time the monies were wrongfully used and not at the time of seizure. See Spagnuolo v. Bonnett, 16 N.J. 546, 109 A.2d 623 (1954). It has never been held that absent an arrest or seizure the presumption of Section 2A:152-7 is applicable. In all published opinions concerning the application of this section there was seizure of money in connection with an arrest for violating the gambling statutes. In the appeal before us Moriarty was in jail at the time the money was found, nor was he subsequently arrested in connection with it. The money was not seized by local or state representatives, but taken by federal officials in connection with back taxes owed by Moriarty.
 
 
 15
 The $168,400.97 referred to by plaintiff, which was discovered later, was found in an entirely separate place where there was gambling paraphernalia pertaining to it and linking Moriarty with it. Moriarty pleaded guilty to possession of lottery slips in connection with that money. At no time ever was there any connection shown between the $2,438,110 and a gambling operation nor was there any arrest made in connection with it. It follows that N.J.S.A. 2A:152-7 cannot be applied to the suit money. In this strange litigation, the ostensible plaintiff, Hudson County, should have been denied any presumption that the currency in dispute was the result of a gambling operation and should have been forced to so prove it, an impossible task as to which there was no legitimate evidence.
 
 
 16
 The money as said was accidentally found by workmen. In addition to it the garage also contained the following: $10,000 in United States Savings Bonds; 20 shares of stock in the Radio Corporation of America; bank records in the name of George B. Smith; a $25 savings bond issued to Ellen Mary Moriarty or Joseph Moriarty; various bank accounts pass books in the name of Joseph Moriarty and personal papers of Moriarty. There was nothing in the garage less than six years old at the time of the discovery and most of the material was between 10 and 20 years old. Even the wrapping on the bills making up the $2,438,110 showed that those bills dated from about 1951. The lack of gambling paraphernalia in the garage was conspicuously noticeable. There was no evidence introduced which would honestly indicate that any sort of a current gambling operation was at all connected with the money in suit.
 
 
 17
 The contention that this money is a product of gambling and subject to forfeiture is clearly wrong under the New Jersey statute of limitations on forfeitures, N.J.S.A. 2A:14-10 which provides:
 
 
 18
 "2A:14-10 2 years and 1 year; action penal statutes
 
 
 19
 All actions at law brought for any forfeiture upon any penal statute made or to be made, shall be commenced within the periods of time herein prescribed:
 
 
 20
 d. Within 1 year next after the offense committed or to be committed against the statute, when the forfeiture is or shall be limited by the statute to any county * * * or to any officer of such county * * *."
 
 
 21
 The wording of this statute makes it very plain that the legislature intended that property be forfeited to the county only on a showing that it had been used in the conduct of an illegal act within one year prior to the commencement of the action. If property derived from gambling was forfeited without regard to the date of the offense, this statute would be meaningless. The false theory that the property might possibly have been the product of an illegal act at some unknown time and at some unknown place which might have been anywhere will not support a forfeiture. All the evidence in this appeal undeniably points to this money as having been in Moriarty's possession for years prior to the commencement of this suit. Whether by the wildest guess it might have been the product of a long past gambling operation is no honest legal reason for stripping the United States of the money which it is entitled to possess. A holding to the contrary would make Section 2A:14-10 void and meaningless.
 
 
 22
 Plaintiff also offers the pronouncement that the money was used by Moriarty as a bank for his gambling operation. The trial judge did not so find. The record is barren of legitimate evidence to that effect.
 
 
 23
 Finally, in appellee's shot gun approach the argument is made that jurisdiction existed under 26 U.S.C. Sec. 7426, which provides for a civil action in a United States District Court by persons other than taxpayers based on an interest in property wrongfully levied upon by the United States. That section was effective November 2, 1966. The bold attempt to assert that it should be applied retroactively does not touch the issue before us. The section limits jurisdiction to the federal courts, which means that a claim against the United States could only be asserted in the federal district court. A state court would lack jurisdiction over an action seeking relief under 26 U.S.C. Sec. 7426. Jurisdiction on removal is derivative in nature, it does not exist if the state court from which it was removed lacks jurisdiction. See Crow v. Wyoming Timber Products Co., 424 F.2d 93 (10 Cir. 1970).
 
 
 24
 The United States never waived its right to question jurisdiction. Lack of subject matter jurisdiction may not be waived by the parties. Hospoder v. United States, 209 F.2d 427, 429 (3rd Cir. 1954); Forgione v. United States, 202 F.2d 249, 253 (3rd Cir. 1953), cert. denied, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384 (1953). Moreover, where the United States (or one of its officers) is sued in a state court, removal by the Government is not tantamount to a consent to be sued nor a waiver of objection it may have to the jurisdiction of the removal court. Minnesota v. United States, 305 U.S. 382, 388-389, 59 S.Ct. 292, 83 L.Ed. 235 (1939). The district court improperly relied on DiFrischia v. New York Central Railroad Co., 279 F.2d 141 (3rd Cir. 1960) in not permitting the United States to have the trial record note the unescapable fact that there was no jurisdiction in the district court to order the United States to give said money to this appellee. There is never foreclosure of bringing out the palpable lack of jurisdiction in the court. The latter itself should affirmatively so state. The district court cannot avoid declaring such lack as in this instance because it may or may not have been mentioned initially. In DiFrischia the court found a party bound by an admission as to a fact on which the diversity jurisdiction of the district court depended. In this litigation the question of jurisdiction was validly raised and the district court, for the above outlined reasons did not have jurisdiction.
 
 
 25
 In a last minute effort to bolster up appellee's position, the opinion in State of New Jersey v. Kaiser, United States District Court for the District of New Jersey, October 15, 1971, is now put forward on behalf of appellee. In that decision the money seized was affirmatively proven to be a part of a current gambling operation where betting slips were found indicating approximately $12,000 in gambling receipts for the very day of the seizure. Neither that opinion or the one in Farley v. $168,400.97, 55 N.J. 31, 259 A.2d 201 (1969) can be twisted so as to justify appellee's position in this appeal.
 
 
 26
 The judgment of the district court will be reversed and the complaint, supplemental complaint and amendments thereto will be dismissed.
 
 
 27
 GANEY, Circuit Judge, concurs in the result of the Court opinion and with Circuit Judge ADAMS' concurrence.
 
 ADAMS, Circuit Judge (concurring):
 
 28
 Although I agree with the result reached by the majority, my views differ sufficiently to warrant a separate statement regarding the jurisdictional problem and the interpretation of the New Jersey forfeiture statute.
 
 
 29
 The dispute here centers on whether Hudson County, New Jersey or the United States is the rightful owner of the $2,438,110 found in garage #48 in Jersey City, New Jersey. Hudson County claims the money as a consequence of the operation of the New Jersey Forfeiture Statute, N.J.Stat.Ann. Sec. 2A:152-6 et seq. The United States asserts that the money is due it because of a valid tax lien, under 26 U.S.C. Sec. 6321, based on the Moriartys' failure to pay federal income tax.
 
 
 30
 A. The Jurisdictional Problem: Applicability of 28 U.S.C.
 
 Sec. 2410
 
 31
 Because Hudson County initiated this lawsuit in the state courts of New Jersey, and the suit is in federal court following removal by the original named defendant, our inquiry implicates the jurisdiction that the New Jersey court had over the original action. "The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." Lambert Run Coal Co. v. B. & O. R.R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922).
 
 
 32
 Neither at the trial court nor on appeal has either side discussed the possibility of jurisdiction based on 28 U.S.C. Sec. 2410. Section 2410 becomes all the more relevant because of the majority's holding that jurisdiction was lacking because the United States had not consented to be sued. The relevant portion of section 2410 reads:
 
 
 33
 "(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter-
 
 
 34
 "(1) to quiet title to,
 
 
 35
 "(2) to foreclose a mortgage or other lien upon,
 
 
 36
 "(3) to partition,
 
 
 37
 "(4) to condemn, or
 
 
 38
 "(5) of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien."
 
 
 39
 The United States clearly has consented to suit by third parties, in a state court, as well as in a district court, under the five listed categories.
 
 
 40
 The money in dispute is personal property and the United States claims a lien on the money based on 26 U.S.C. Sec. 6321 because Moriarty owes it taxes.[1] If the nature of the claim to the money made by Hudson County falls within one of the five categories, the New Jersey state court would have had jurisdiction over the original lawsuit and the District Court would have had jurisdiction after the removal.
 
 
 41
 We are presented with two problems of interpretation regarding section 2410. First, the District Director of the Internal Revenue Service was the named defendant in the action prior to removal to the District Court. It was not until January, 1969 that the United States was substituted for the District Director as the defendant. While section 2410 authorizes an action against the United States to be commenced in the state courts, it is unclear whether the United States must be made a party at the time of commencement or whether naming an officer of the United States will suffice. Compare In re Escheat of Monies, 187 F.2d 131, 135 (3d Cir. 1950), with First Nat'l Bank of Emlenton v. United States, 265 F.2d 297, 300 (1959). Because of the disposition of the jurisdictional question on other grounds, it is not necessary to express an opinion on this knotty problem.[2]
 
 
 42
 The second question regarding jurisdiction is whether the action by Hudson County is one of those for which Congress expressed the intent, in section 2410, to waive the sovereign immunity of the United States. It appears that the only provision that may be considered applicable to the resolution of this problem is section 2410(a) (2), which would permit Hudson County to sue "to foreclose a mortgage or other lien upon" monies on which the United States claims a lien. That the United States claims the $2,438,110 by a lien is manifest from the record and from the language of 26 U.S.C. Sec. 6321. It is not at all clear, however, that Hudson County is attempting to foreclose a mortgage or a lien, or that Congress intended to waive the sovereign immunity of the United States when there is a suit by a state to enforce a forfeiture.
 
 
 43
 Throughout this litigation, Hudson County has asserted that it is entitled to the money because of N.J.Stat.Ann. Sec. 2A:152-6 et seq., and that the money has been forfeited to it. Section 2A:152-9 never speaks in terms of the creation of a lien in favor of a county whenever money is seized in connection with a gambling operation. Instead, it states that "the county treasurer may * * * make application * * * to the county court for an order to show cause why such money * * * shall not be forfeited * * *." Therefore, because Hudson County's action is not one "to foreclose a * * * lien," it would be possible, on this basis alone, to hold that section 2410 does not authorize this suit to be brought in a state court.
 
 
 44
 The legislative history of section 2410 and its predecessors makes even more apparent that Congress did not provide that a suit might be filed in a state court against the United States for a forfeiture proceeding.
 
 
 45
 "This legislation has been recommended * * * to relieve against the injustice with which mortgagees are confronted under the present state of the law who find, when it is necessary to foreclose their mortgages, that there has been filed against the property a junior lien by the Federal Government for some debt due the United States by the owner of the equity in the property, and for which the mortgagee owes no obligation either legal or moral. In such circumstances, the mortgagee finds himself at an impasse. It is impossible for him to bring about a judicial sale of the property owing to the cloud upon the title created by the Government's lien. He can not remove the lien as there is no method by which he may bring the United States in as one of the parties to the foreclosure proceeding. * *." H.R.Rep.No.95, 71st Cong., 2d Sess. 1.
 
 
 46
 Thus it is clear that Section 2410 was enacted to protect innocent purchasers whose property was encumbered by a junior federal lien. Although, by judicial interpretation, section 2410 has been broadened to encompass suits by municipalities brought in state courts to foreclose their tax liens as against liens asserted by the United States, New York City v. Evigo Corp., 121 F.Supp. 748 (S.D.N.Y.1954), no cases have been brought to our attention permitting such an action when a county has sought to enforce a forfeiture. There is no evidence that a suit to enforce a forfeiture was contemplated by Congress, and there would appear to be no compelling reason for so extending the scope of section 2410.[3]
 
 
 47
 B. Interpretation of New Jersey Forfeiture Law
 
 
 48
 Even assuming arguendo that a state court has jurisdiction to entertain a suit by a municipality against the United States to enforce a forfeiture, it is not clear that the District Court was correct in its interpretation of the applicable New Jersey law dealing with forfeiture. The original New Jersey forfeiture statute provides that "any furniture, implement, device or machine, made or used for the purpose of gambling" becomes the property of the county and is forfeited. N.J.Stat.Ann. Sec. 2A:152-6. Under this provision, the contraband is forfeited at the moment of its illegal use, Farley v. $168,400.97, 55 N.J. 31, 259 A.2d 201 (1969). But the county has the burden of proving the illegal use before the forfeiture may be enforced, Krug v. Board of Chosen Freeholders, 3 N.J.Super. 22, 65 A.2d 542 (App.Div. 1949).
 
 
 49
 In 1942, the state legislature added provisions to the basic statute making it clear that the county, as opposed to the state, would be entitled to any seized money. The provision created the presumption that any money seized in connection with an arrest for violation of a gambling law was prima facie contraband and forfeit. N.J.Stat.Ann. Sec. 2A:152-7. See Farley v. $168,400.97, supra. Thus, depending on which provision is applicable the one placing the burden on the county, or the one creating a presumption in favor of the county-the county may or may not be required to establish affirmatively the connection between the seized money and the gambling operation.
 
 
 50
 The county asserts that it is entitled to the benefit of the presumption of section 152-7, and if it is not, that it has in any event proved the illegal use because the $2.4 million was utilized as the bank for Moriarty's numbers operation. The county relies heavily on Farley to support its position that the presumption applies here.
 
 
 51
 Farley arose out of the same events which precipitated the present lawsuit. Following the discovery of the $2.4 million in garage #48, the Jersey City Police Department entered garage #56, just down the street, and discovered the $168,400.97 along with gambling paraphernalia belonging to Moriarty. The dates on the seized lottery slips indicated that Moriarty had been operating a numbers game from December 14, 1961 to February 10, 1962. While he was serving his sentence for conviction of other gambling offenses, Moriarty was indicted for a series of violations. He pleaded guilty to possession of the seized lottery slips on various dates from December 14, 1961 to July 6, 1962. Upholding Hudson County's claim to the money against an asserted tax lien by the United States, the New Jersey Supreme Court held that the forfeiture contemplated by the New Jersey statutes occurred at the time of the illegal use and did not await either actual seizure of the funds by the state or a judicial determination of forfeiture. The court also held that the arrest for violation of gambling laws and the seizure of the funds need not be simultaneous.
 
 
 52
 Hudson County would view Farley as standing for the broad propositions that in order for the presumption of section 152-7 to become operable there need not be a seizure of the funds by State officials, and that any inferential link between the money and gambling is sufficient to make the money prima facie contraband. However, Hudson County's view of Farley overlooks several important considerations. In Farley it was beyond question that, based on the location of the $168,400.97, the money was used in the operation of Moriarty's numbers business. Further, because of Moriarty's plea of guilty to possession of the numbers slips, there was no doubt that the money had in fact been seized in connection with an arrest for violation of gambling laws.
 
 
 53
 In the present case, the money was seized by agents of the F.B.I., not by state officials. Although it draws no distinction between seizures by one sovereign or the other, the presumption section was enacted in 1942 as part of a broad legislative scheme to simplify the procedure for determining claims to seized money. Farley, supra. Section 152-8 states that pending the disposition of the money, it shall be deposited with the county treasurer.[4] It is difficult to imagine the purpose of this provision unless the legislature envisioned seizure by state officials in the first instance. Thus, it would appear that the presumption section would be inapplicable for this reason alone.
 
 
 54
 Other reasons exist, however, to compel the conclusion that the presumption section is not applicable in this case. Moriarty has never admitted that the $2,438,110 was used as part of his gambling operation. When this money was found in garage #48, no evidence of gambling was uncovered. The County has not pointed to any arrest in connection with which this money was seized. The County asserts that the $2.4 million represents an accumulation of profits by Moriarty from his illegal business or that the money was used by him as the bank for his operation. The argument perhaps would continue that the money was seized in connection with any of Moriarty's numerous gambling arrests. It appears doubtful that any case interpreting the presumption section would permit the arrest to be unspecified. Moreover, the presumption section is penal in nature, and, as such, must be construed strictly. State v. La Bella, 88 N.J.Super. 330, 212 A.2d 192 (1965). Logic would dictate then that the money must be seized in connection with a specific gambling arrest. Therefore, absent both a seizure by state officials and a reference to a particular arrest, the County should not have been given the advantage of section 152-7.
 
 
 55
 Section 152-6,[5] on the other hand, requires neither actual arrest nor seizure by state officials to create a forfeiture. As noted above, section 152-6 does put the County to its proof that the money was used illegally. The County attempted to prove in the District Court that the money was employed as Moriarty's bank, and has asserted on appeal the reasonableness of that conclusion. Because it improperly relied on the presumption of section 152-7, the District Court never found, as a fact, that the money was used as Moriarty's bank. Rather, it found the money to be "wholly the 'product' of a gambling operation," as distinguished from finding that it was "used for the purpose of gambling," as the statute requires. The District Court's conclusion that money which is the product of gambling is subject to forfeiture appears to be contrary to New Jersey decisional law. In Krug v. Board of Chosen Freeholders, supra, 65 A.2d at 543, the Court stated:
 
 
 56
 ". . . The money was seized on the theory that it was an integral part of the gambling operation and thus there attached to it the characteristic of a gambling device. Money as such is not ordinarily an instrument of gambling or subject to seizure and confiscation as such an instrument, but is generally the stake for which men gamble and, therefore, not subject to confiscation as a gambling device. Money may, however, become subject to such seizure where it has become an integral part of the gambling operation. . . ."
 
 
 57
 Therefore, money which represents nothing more than an accumulation of profits from gambling "the stake for which men gamble" or the product of gambling is not subject to forfeiture under New Jersey law.
 
 
 58
 The only theory which would support the County's assertion that the money was forfeited is that the $2.4 million was used as the bank for Moriarty's operation. Testimony was introduced by the County to support this view and evidence was introduced by the United States to refute it. The District Court felt it unnecessary to make a finding on this point. Viewing only the record, I cannot say that, as a matter of law, either side should prevail on this issue.
 
 
 59
 Thus, even if it were held that jurisdiction were present, I would be constrained to remand the case to the District Court for further findings of fact concerning the use of the $2.4 million under the terms of section 152-6 of the Forfeiture Act.
 
 
 
 [1]
 "2A:152-9. Disposition, on conviction, of money seized; order of forfeiture
 "If the trial or other ultimate disposition of such charge or charges, indictment or indictments result in a record of conviction being entered against the person or persons so arrested as aforesaid, in connection with which arrest the said money, currency or cash was seized or captured, as aforesaid, then the county treasurer may, after 6 months from the date of the record of the entry of such conviction, make application, without prior notice, to the county court for an order to show cause why such money, currency or cash so seized or captured, shall not be forfeited to the sole use and gain of the county; such order to show cause shall then be served upon the person from whom said money, currency or cash was so seized or captured, in accordance with the rules of practice and procedure. Upon the return of the said order, hearing shall be conducted in summary manner, and at such hearing proof of the conviction shall be prima facie evidence that the money, currency or cash so seized or captured was used in connection with the unlawful playing of any game wherein money or other thing of value is wagered or gambled; provided, however, that proof, to the satisfaction of the court, shall first be established that no action or proceeding, then pending and undetermined, has been filed in any court of competent jurisdiction against said county treasurer seeking a recovery or return of the money, currency or cash so held in custody." (Emphasis supplied.)
 
 
 [2]
 "28 U.S.C. Sec. 1442(a) (1) Federal officers sued or prosecuted
 "(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 "(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."
 
 
 [3]
 "2A:152-6. Destruction of gaming apparatus
 "Whenever any furniture, implement, device or machine, made or used for the purpose of gambling or for the playing of any game wherein money or other thing of value is wagered or gambled, shall be seized or captured by the police, constabulary or other officer, the prosecutor of the county where such seizure is made shall have the same destroyed or rendered useless for the uses and purposes aforesaid, and it shall be unlawful to return them to the person or persons owning the same, or to any other person; provided, it shall be lawful for the prosecutor, in his discretion and subject to rules and regulations which may be promulgated by the attorney general, to donate and deliver such of them as may be used for lawful purposes to any institution located within the county where such seizure is made and which is under the control and operation of the federal government, or to any institution, wherever located, which is under the control and operation of the state of New Jersey or any political subdivision thereof, or to any institution located within the county where such seizure is made and which is under the control and operation of any public, semipublic, or private, charitable, religious or philanthropic institution or organization.
 "The attorney general shall have authority to make, amend and repeal, from time to time, such rules and regulations as he may, in the public interest, deem necessary, to assure an orderly procedure and reasonable uniformity in the disposition of such property, in accordance with the provisions hereof in the several counties."
 
 
 [4]
 "2A:152-7. Money seized on arrest for playing unlawful games; return prohibited; exceptions
 "Whenever any money, currency or cash shall be seized or captured by the police, constabulary or other officer in connection with any arrest for violation of or conspiracy to violate any gambling law of this state, the said money, currency or cash shall be deemed prima facie to be contraband of law as a gambling device, or as part of a gambling operation, and it shall be unlawful to return the said money, currency or cash to the person or persons claiming to own the same, or to any other person, except in the circumstances and manner hereinafter provided."
 
 
 [1]
 26 U.S.C. Sec. 6321 reads:
 "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
 
 
 [2]
 Prior to the enactment of 26 U.S.C. Sec. 7426, actions against the District Director could be commenced by third parties in Federal Court only. See, H.Rep.No.1884, 89th Cong., 2d Sess., 27 (1966)
 
 
 [3]
 Other courts have also adopted an approach narrowly construing this provision. See e. g., Falik v. United States, 343 F.2d 38 (2d Cir. 1965), Shaw v. United States, 321 F.Supp. 1267, 1269 (D.Vt.1970), Johnson Service Co. v. H. S. Kaiser Co., 324 F.Supp. 745 (N.D.Ill. 1971)
 
 
 [4]
 One of the difficulties with this case is that both sides have tended to characterize it as a forfeiture proceeding. As contemplated by the New Jersey scheme, the action is basically in rem. Normally, an officer of a county will have seized the contraband money and have deposited it with the county treasurer. The county will then initiate a proceeding which states to the world that the money will be forfeited to the county unless someone can show a higher right to the money. Thus, in Farley v. $168,400.97, supra, the United States was required to appear in the New Jersey courts in order to assert its tax lien on the money
 The present action, on the other hand, is in a very different posture. The United States has seized the money pursuant to a lien, and Hudson County has sued the government in an attempt to put the money in the County treasury. The suit appears to be in personam-directly against the United States-and Hudson County relies on the New Jersey forfeiture laws as to the basis for its cause of action, not as the form of the action. Because this lawsuit is not a forfeiture proceeding in the traditional sense, the applicability of the presumption section is highly questionable since it is a portion of a statute setting forth the procedures for enforcing a forfeiture.
 
 
 [5]
 Section 152-6 reads:
 "Whenever any furniture, implement, device or machine, made or used for the purpose of gambling or for the playing of any game wherein money or other thing of value is wagered or gambled, shall be seized or captured by the police, constabulary or other officer, the prosecutor of the county where such seizure is made shall have the same destroyed or rendered useless for the uses and purposes aforesaid, and it shall be unlawful to return them to the person or persons owning the same, or to any other person; provided, it shall be lawful for the prosecutor, in his discretion and subject to rules and regulations which may be promulgated by the attorney general, to donate and deliver such of them as may be used for lawful purposes to any institution located within the county where such seizure is made and which is under the control and operation of the federal government, or to any institution, wherever located, which is under the control and operation of the state of New Jersey or any political subdivision thereof, or to any institution located within the county where such seizure is made and which is under the control and operation of any public, semipublic, or private, charitable, religious or philanthropic institution or organization."